BROOKFIELD *v.* HARAHAN VIADUCT IMPROVEMENT DISTRICT.

4-2768

Opinion delivered December 5, 1932.

*J. F. Gautney* and *J. C. Brookfield,* for appellant.

*J. L. Shaver* and *S. W. Ogan,* for appellee.

BUTLER, J. The Harahan Viaduct Improvement District was created by an act of the General Assembly of 1923 for the purpose of constructing and maintaining an approach to the Harahan bridge spanning the Mississippi River opposite the city of Memphis. This approach is in Crittenden County, and is known as the Harahan Viaduct. Shortly after the creation of the district, its commissioners met, and Renfrow Turner was elected chairman, and, on the first day of November, 1923, by resolution duly passed, it employed the appellant and M. B. Norfleet, Jr., attorneys, to represent the said district for an agreed sum of $7,500 and other necessary expenses while engaged in the discharge of their duties. Sixty per cent. of the fee was to be paid upon the completion of the transcript of the proceedings of said district for the bond issue, and the balance due and payable at the discretion

of the board. It developed that the commission was unable to function under the act, and the board met on October 28, 1924, for the purpose of arranging for the obligations it had incurred, which included some preliminary expenses for engineering and legal services. On that occasion the board passed the following resolution:

"In consideration of legal services performed to date by J. C. Brookfield and M. B. Norfleet, Jr., attorneys for the district, the district having heretofore issued to them certificates of indebtedness in the total sum of two thousand dollars ($2,000) on their fee, as provided by contract between the district and them, in the total sum of seventy-five hundred dollars ($7,500), it being now the purpose of said district to suspend further expenses for legal services until hereafter decided by a majority of the board of commissioners of the district. It is hereby ordered by the board that the president and secretary issue certificates of indebtedness of $500 each to said attorneys in consideration of their preliminary legal services to date.

"That this provision of the board shall not be deemed to effect said contract of said attorneys as to the cancellation thereof, but the board, in its best judgment, deems said attorneys fully paid to date for their services.

"It is agreed that, in the event said district does not operate further and function, that said legal services have been fully paid to date."

On the 24th of March, 1925, the board had a meeting and adopted a resolution reciting the fact that the district had been unable to function, and that certain necessary preliminary steps had been taken and expenses incident thereto incurred, including engineering, legal and incidental services, in a total amount of $15,698.59; that the Supreme Court had held that such preliminary expenses are binding liens upon all the real property within the district, and provided for the payment of these from tolls to be collected under the supervision of the county court of Crittenden County.

There were some other meetings of the board, the final meeting appearing to have been on the 16th of October, 1926, at which time the preliminary expenses referred to in the resolution of March 24, 1925, had been paid. The Harahan Viaduct, in the meantime, had been taken over and constructed by the State Highway Department, and the cost of constructing the same and the preliminary expenses had been paid out of tolls collected from the wooden structure, and the structure as finally completed became a part of the State Highway system, and, as such, is now maintained by the Highway Commission. It is undisputed that the appellant, Brookfield, has received the amount authorized by the resolution of October 28, 1924. The last payment of $500 was in the form of a voucher which was issued to him on October 28th, following. On the 27th day of November, 1929, the appellant filed suit against the improvement district in the chancery court of Crittenden County, Arkansas, (cause No. 3830) in which he sought to recover judgment against the defendant district in the sum of $2,366 as balance claimed by him under his contract of employment aforesaid. On March 17, 1930, the court rendered judgment by default against the district for the sum sued for and retained jurisdiction of the cause, for the purpose of fixing a lien and appointing a receiver to enforce the same if the judgment was not paid within sixty days, and for that purpose, continued the cause.

On the 14th day of July of the same year the appellant filed a separate complaint in the said court (cause No. 3939), setting up the judgment he had previously obtained, and asking for a receiver and that a tax be levied upon the lands to pay his judgment. Judgment was rendered on the supplemental complaint by the chancellor in vacation in conformity with its prayer. Various newspapers, having a circulation in eastern Arkansas, published the action of the court as a news item, and by this means it was brought to the attention of the interveners, who are landowners and taxpayers within the boundaries of the district and against whose lands the tax was to be

levied. This action was instituted by the St. Francis Levee Board, and two of its members, as taxpayers, to vacate the decrees aforesaid, on the grounds that they were rendered without notice, and that there was a valid defense to the claim of Brookfield. Testimony was taken, and, by agreement, this case was submitted to the chancellor on the pleadings and testimony adduced, who entered a decree finding that, at the time of the rendition of the decree in the case of *Brookfield* v. *Imp. Dist.*, cause No. 3830, the court was without jurisdiction of the defendant district, and appellees were without knowledge of the suit prior to the rendition of the decree, and that "the court was not correctly advised as to the service of summons on it and waivers by the commissioners of defendant district, and was not advised of the circumstances under which the defendant had paid to the plaintiff the sum of $1,500; that there is a valid defense to the original cause of action, as alleged, in which judgment was rendered herein, against said Harahan Viaduct Improvement District," and, in accordance with these findings, a decree was rendered cancelling and setting aside the judgment complained of and all subsequent proceedings had thereunder, and holding "that said original complaint be not dismissed, but left to the end that the said J. C. Brookfield may, if he so desires, cause proper service to be had upon said Harahan Viaduct Improvement District."

From that decree this appeal is prosecuted, and for a reversal it is contended, first, that the board of directors of St. Francis Levee District, J. L. Williams and H. N. Pharr, being strangers to the original suit, did not have the legal right to bring an action to set aside the judgment obtained by the appellant. The facts are that the St. Francis Levee District and the two individuals named are large landowners and taxpayers within the boundaries of the improvement district, and, while not parties to the original action by name, they are in fact the real parties in interest. In the pleading filed by them it is alleged, as a ground for the vacation of the decrees complained of, that they are such landowners and taxpayers,

and the facts alleged show that the burden sought to be placed upon their lands was an illegal exaction.

Section 13, article 16, of the Constitution provides that: "Any citizen of any county, city or town may institute suit in behalf of himself and all others interested to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." Courts of chancery are vested with the jurisdiction in actions under this constitutional provision. *Harrison* v. *Norton,* 104 Ark. 16, 148 S. W. 497. And in *Seitz* v. *Merriwether,* 114 Ark. 299, 169 S. W. 1175, cited by appellee, we held: "That provision of the Constitution does not include improvement districts, but the principle is the same, and it is the duty of the court of equity to mold a remedy for taxpayers whose interests are involved in the operation of improvement districts." Therefore the appellees were justified in instituting suit to protect themselves and others from the alleged unlawful exaction.

It is next insisted that suits to set aside a judgment may only be for the causes mentioned in § 6290 of Crawford & Moses' Digest, and only in the manner provided in § 6292, *id.,* and that the allegations in the pleading filed by the appellees do not sufficiently allege the rendition of the decree for want of service of summons, and, because of that, the judgment is void. It is immaterial by what name the pleading be designated; if it contains the elements required by § 6290, it will be sufficient. The allegation of the complaint regarding the procurement of the decree without service is as follows:

"Your interveners allege that the judgment rendered in favor of the plaintiff and against the viaduct district is void for following reasons:

"1. That, although said judgment recites that service of personal process was had upon all of the commissioners of said district, said statement is false and untrue, and the true facts are that said commissioners of said district were not personally served with any personal process whatsoever, and that they, your interveners herein, had no knowledge that said cause of action was

pending in the chancery court until notices appeared in several papers stating that all the property in said district would be sold to satisfy said judgment.''

Section 6238 of the Digest is as follows: ''All judgments, orders, sentences and decrees made, rendered or pronounced by any of the courts of the State against any one without notice, actual or constructive, and all proceedings had under such judgments, orders, sentences or decrees, shall be absolutely null and void.''

The proceeding in this case is for the purpose of vacating the decree complained of, and is therefore a direct attack. *Hall* v. *Huff,* 122 Ark. 67, 182 S. W. 535; *Morgan* v. *Leon,* 178 Ark. 769, 12 S. W. (2d) 404. And the allegation is sufficient to allege a fraud practiced by the successful party within the meaning of the statute. ''A judgment by default, procured through the representation of plaintiff's attorney that there was a return of service of process, when in fact there had been no service and no return of service by the officer, is a judgment obtained through 'fraud practiced by the successful party,' within the meaning of the fourth subdivision of § 3909, Mansf. Digest, though the attorney acted under a mistake.'' *Chambliss* v. *Reppy,* 54 Ark. 539, 16 S. W. 571.

It is contended by the appellant that the proof was insufficient on the question of notice and the defense alleged, to justify the setting aside of the decree. The decree complained of, as to the service of summons, recited as follows: ''And the defendant, although duly served with summons upon Renfrow Turner, chairman, and other members of its board of commissioners, as required by law, came not but made default.'' On the question of service of summons, a number of witnesses testified. Appellant testified that he had caused service of summons to be had upon Renfrow Turner as chairman of the board of commissioners, and upon J. T. Robinson and R. M. Barrett, two other members of the board, and that he obtained the waivers in writing of four other of the commissioners upon the back of copies of the summons. Renfrow Turner stated that he did not remember;

R. M. Barrett was not questioned about the service of summons; and the others disputed the testimony of the appellant. The officers, whose duty it was to serve the various summons, were not called, and did not testify. Appellant testified that he had taken all of the original papers to his office to prepare the decree, and, after the same had been approved by the chancellor, he had mailed the decree and exhibits back to the clerk, but none of the summons could be found in the files of the court. There was testimony also which tended to show that Renfrow Turner was not the chairman or a member of the board of commissioners at the time of the alleged service of summons upon him, and had not been for a considerable length of time, having resigned upon his appointment to the office of county judge, and Z. T. Bragg being appointed by the Governor in his stead. It therefore appears that the chancellor was justified in his finding that the court was without jurisdiction because of want of service.

There was also testimony tending to establish the defense alleged, but, as the chancellor did not dismiss the complaint, it would be premature to discuss that testimony or indicate our view of its weight, as under the decree appellant may proceed upon proper service obtained to have his claim adjudicated.

On the whole, we are of the opinion that the decree of the chancellor was correct, and it is therefore affirmed.