OATS *v.* SMITH.

4-4792

Opinion delivered November 8, 1937.

*James D. Head,* for appellants.

*Ned Stewart, House, Moses & Holmes* and *H. B. Solmson, Jr.,* for appellees.

HUMPHREYS, J. This suit was brought on October 16, 1936, by Hon. Ned Stewart, prosecuting attorney of the eighth judicial circuit, in the circuit court of Miller county, against Wiley J. Smith, ex-treasurer of said county, and his surety, the National Surety Company, in the name of the state of Arkansas for the benefit of Miller county to recover from him and his bondsmen $29,982.41,

alleged to have been paid out by said treasurer on warrants issued in excess of the general revenues of said county during the years of 1932, 1933 and 1934 in violation of law, specifically alleging the amount he paid out on warrants wrongfully and unlawfully issued during each year. The complaint was filed on a report made to him and information furnished to him by the auditorial department of the state.

. A joint answer was filed by appellees (defendants below) denying the allegations of the complaint and pleading that a large part of the warrants had been paid by him under an order of the circuit court in a mandamus proceeding against him.

On March 9, 1937, the prosecuting attorney wrote a letter to Hon. Milton Oats, county judge of Miller county, that the suit he had brought was one to recover $29,982.41 for the alleged payment of void and illegal warrants issued during the years 1932, 1933 and 1934, and that after a series of conferences with Mr. Bryan Sims, representative of the State Comptroller's office, he was of opinion that only about $9,000 or $9,500 might be recovered, and that the bonding company had increased its offer for full settlement of the claim to $7,500 cash and that in his opinion, concurred in by the representative of the comptroller's office, the cash offer of settlement was to the best interest of the county and should be accepted. He stated in the letter that he was willing to take full responsibility for settlement, but did not want to settle the claim unless the county judge agreed with him that it was for the best interest of the county.

Having received no response from the county judge, the prosecuting attorney wrote him another letter of date April 29, 1937, to the effect that he had agreed with the attorneys of the National Surety Company to settle the claim for $7,500 and that he was advising the State Comptroller's office that he had done so, but that before the settlement became final and judgment was entered he wanted to take the evidence of Mr. Bryan Sims, representative of the Comptroller's office, before Judge Bush and that he wanted him, the county judge, to have an opportunity to enter his objections to the settlement. The

prosecuting attorney stated in the letter that although he disliked to settle the claim over the objection of the county judge he felt that the responsibility was his, and that he thought a settlement for $7,500 was fair and equitable.

On May 4, 1937, after receiving the second letter informing him that a settlement had been agreed upon, the county court rejected the compromise offer and entered an order employing Hon. James D. Head to represent the county as special counsel in the litigation.

On the 4th day of May, 1937, appellant, in his capacity as county judge and as a taxpayer, filed an intervention alleging that the proposed settlement by the prosecuting attorney with the bonding company was an improvident settlement, stating that after an investigation he had concluded that the county could recover a very much larger sum in a trial of the cause upon its merits than $7,500, and prayed that the court reject the proposed settlement and proceed to a trial of the cause upon its merits and praying that the attorney employed by him be enrolled as attorney for the county to prosecute the suit to a conclusion.

The trial court heard the evidence of J. B. Sims and others, over the objection of appellants, tending to show that the settlement was fair and equitable and that in his opinion to the best interests of the county, and refused to try the cause on its merits, holding that the prosecuting attorney had authority to compromise the case, and over the objection of appellant entered a judgment against the bonding company for $7,500 in keeping with the compromise agreement, from which is this appeal.

The only question for determination on this appeal is whether the prosecuting attorney had authority to settle the claim set forth in the complaint over the protest of Milton Oats, in his capacity as county judge and as a taxpayer. This suit was instituted by the prosecuting attorney on the report made to him by a representative of the State Comptroller to the effect that Wiley J. Smith, ex-treasurer of Miller county, had paid warrants wrongfully and unlawfully issued in excess of the revenues for the years 1932, 1933 and 1934 in the sum of $29,-

982.41, advising that suit be brought for said amount against the ex-treasurer and his bondsmen.

Act 146 of the acts of the General Assembly of 1933 is entitled "An act to facilitate recovery on bonds of officials in this state, and for other purposes." Section one of the act is as follows:

"It shall be the duty of the State Comptroller and ex-officio director of county audits to give notice and make proof of loss to, and demand payment of the surety or sureties on any bond executed by any officer, the affairs of whose office said State Comptroller and ex-officio director of county audits is now or may hereafter be directed or authorized by law to check or audit, of any shortage or other liability of said officer for which said surety or sureties may in any wise be liable."

Section 2 of said act provides that the State comptroller shall certify the liability of officers or the sureties to the Attorney General or prosecuting attorney of the circuit in which said officer resides. And said section of the act makes it the duty of the Attorney General or prosecuting attorney to immediately take the necessary legal action to recover from said officer and the surety or sureties the amount of the officer's liability. It also provides that in the event the Attorney General or prosecuting attorney fails or refuses to take action on the claim that the Comptroller shall do so. The section also provides that the Attorney General, prosecuting attorney, or State Comptroller may, with the written approval of the Governor, employ special counsel to assist in the prosecution of the suits. Section three of said act provides for the compensation the special counsel may receive in case of recovery. Section five of the act provides that all laws and parts of laws in conflict with this act are repealed.

There is nothing in this act authorizing the county judge or a taxpayer to institute or prosecute such a suit and there is no provision in it authorizing the county court to employ special counsel to prosecute such a suit. There is no provision in this act providing for the Attorney General or the prosecuting attorney or the State Comptroller to receive any part of a recovery had in the

prosecution of such a suit as a fee. It imposes the duty to prosecute such suits upon them as a part of their official duties and without pay. It is not expressly provided in the act that the Attorney General or prosecuting attorney or the State Comptroller can compromise such a suit after it has been instituted, but certainly it was not the intention of the Legislature to prevent the Attorney General or the prosecuting attorney or the State Comptroller from compromising such a suit if in the exercise of a sound discretion they regard a compromise as being best for the county. The Attorney General and prosecuting attorneys are elected by the people and the State Comptroller is appointed by the Governor, and the Legislature in the passage of this act seems to have imposed upon them this important duty and to have conferred upon them the sole authority to institute and prosecute such suits to the exclusion of all other officials. It was most fitting that the Legislature impose this duty upon them, for in suits of this character an accounting as well as legal knowledge is required. There is no allegation in the intervention of fraud on the part of these officers in effecting the settlement and without such a showing any settlement made by them after the institution of such suits by them must be regarded as having been made in the best of faith and to the best interest of the county or counties involved in the litigation. In addition to this act we find that by §§ 8312 and 8313 of Crawford & Moses' Digest such duties as the institution and prosecution of suits, both civil and criminal, is conferred upon prosecuting attorneys in the several districts and there is nothing in those sections which deprives the prosecuting attorney from controlling such litigation.

Section 2279 of Crawford & Moses' Digest conferring general powers upon county courts imposes no duty upon them to institute and prosecute suits of this character.

We have concluded from a careful reading of all these statutes that when the prosecuting attorney brings a suit against an official upon a liability to the county and against his bondsmen he, not the county judge or some taxpayer, has control over the litigation.

The trial court in this case allowed the prosecuting attorney $750 or 10 per cent. of the amount recovered for a fee, but we find no authority for this in the statutes of our state. These duties are imposed by the Legislature upon the prosecuting attorney as a part of his legal duties and no fee has been fixed by the Legislature for services in this regard. The trial court was correct in rendering a judgment against the bondsmen of Wiley J. Smith for $7,500, the amount agreed upon in settlement of the claim sued upon, but was in error in allowing 10 per cent. of the amount to the prosecuting attorney.

The judgment rendered in favor of the state for the benefit of the county for $7,500 is affirmed, but the judgment allowing the prosecuting attorney $750 is reversed and the cause remanded for proceedings not inconsistent with this opinion.

SMITH, J., dissents.

GRIFFIN SMITH, C. J., disqualified and not participating.