QUINN *v.* STUCKEY, ADMR.

5-1697                                                       319 S. W. 2d 839

Opinion delivered January 19, 1959.

*Bruce Ivy & James E. Hyatt, Jr.,* for appellant.

*J. G. Waskom & John S. Mosby,* for appellee.

ED. F. McFADDIN, Associate Justice. The Trial Court sustained a demurrer to the complaint and dismissed the case. The plaintiffs (appellants) have appealed; and the sole issue is whether the complaint stated a cause of action.

The plaintiffs, as the heirs at law of Esther Lidell Sisson Goodin, brought this suit against the defendants, who together constitute all those interested in the estate of Joe Dean Goodin. The complaint alleged that Joe Dean Goodin, the husband, and Esther Lidell Sisson Goodin, the wife, were married on December 18, 1930; that they each then had only a very small estate; that at or shortly after the marriage, the said husband and wife entered into an oral agreement to form a partnership, for the purpose of acquiring lands and other properties and operating the same under the name and style of J. D. Goodin; that by the terms of said agreement, each of the parties was to and did contribute to the said partnership all of his or her property, capital, labor, and services, and each was to share jointly in the profits of the partnership; that all of the property was to be

held and used for their mutual benefit during their joint lives.

We now copy certain of the germane allegations of the complaint, against which the demurrer was sustained:

". . . that at the time of their marriage the said Esther Lidell Sisson Goodin and Joe Goodin entered into an oral agreement to form a partnership or joint adventure for the purpose of acquiring lands and property and operating farms in Poinsett County, Arkansas, under the name and style of Joe Dean Goodin or J. D. Goodin. By the terms of said agreement, each of said parties was to and did contribute to said partnership or joint adventure all of his or her property, capital, labor, and service, and each was to share equally in the profits, income, increments, losses, and labor of said partnership or joint adventure; that all of the property, profits, income and increments acquired and held by said partnership or joint adventure was to be, and was, held and used for their mutual benefit during their life time; that upon the death of either partner or joint adventurer, the survivor would hold and have the full use and benefit of all of said partnership or joint adventure property until his or her death, and upon the death of the survivor, the partnership or joint adventure would terminate, and all of said property (be) divided equally, one-half to the heirs of the said Joe Dean Goodin and one-half to the heirs of the said Esther Lidell Sisson Goodin."

The complaint further alleged that the partnership had assets of realty and personalty into the hundreds of thousands of dollars; that the wife, Esther Lidell Sisson Goodin died on October 9, 1944; and that the husband, J. D. Goodin, remained in control of the partnership assets pursuant to the agreement; that he died on January 11, 1957; and that his death terminated the partnership agreement. The plaintiffs claimed that under the partnership agreement they were entitled to one-half of all the partnership assets. To the complaint the defendants filed general demurrers, which, as hereto-

fore recited, were sustained, and the case was dismissed, when the plaintiffs elected to stand on the complaint.

At the outset it is well to state the rule for testing a case on demurrer. In *Tyler* v. *Morgan*, 214 Ark. 667, 217 S. W. 2d 606, we said:

"Appellees demurred to this complaint on the ground that it did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer and this appeal followed.

"The question presented is: Treating all allegations in the complaint, which are well pleaded, as true, and construing them liberally in favor of the pleader, as we must, was a cause of action stated? We hold that there was. 'It is not necessary that the complaint should state a cause of action in every particular, for if it contains the substance of a cause of action imperfectly stated, the presumption would be that the defects in the complaint were cured by the proof at the trial.' *Clow* v. *Watson*, 124 Ark. 388, 187 S. W. 175."

After a careful study we reach the conclusion that the demurrer should have been overruled in the case at bar; and here are our conclusions as against the matters claimed to be defects in the complaint:

(1) The complaint alleged that the husband and wife formed a *partnership*. It is true that the case of *Gilkerson-Sloss Com. Co.* v. *Sallinger*, 56 Ark. 294, 19 S. W. 747, held that a husband and wife could not be *partners* in a commercial venture; but that case was decided in 1892 and its effect was overcome[1] by Act No. 159 of 1915 and by Act No. 66 of 1919, both as now found in § 55-401 Ark. Stats. We have recognized the partnership status between husband and wife in these cases: *Williams* v. *Williams*, 186 Ark. 160, 52 S. W. 2d 971; *Price* v. *Price*, 217 Ark. 6, 228 S. W. 2d 478; and *Reed* v. *Reed*, 223 Ark. 292, 265 S. W. 2d 531.

---

[1] See the article by E. B. Meriwether: "The Partnership of Husband and Wife in a Mercantile Business in Arkansas", in Arkansas Law School Bulletin of May, 1931, Volume 2, page 67. See also annotation in 157 A.L.R. 652, "Validity of partnership agreement between husband and wife."

(2)   The complaint alleged that the partnership agreement was *oral,* and that the partnership was to engage in acquiring and holding *lands.*  But in *Russell* v. *Williams,* 197 Ark. 1086, 126 S. W. 2d 614, we held that the statute of frauds did not apply to an oral contract of partnership formed for the purpose of buying and selling land.

(3)   The complaint alleged that the partnership would continue to be operated after the death of one of the partners.  But we cannot say that the bare allegation was demurrable.  In 40 Am. Jur. 327, ''Partnership'', § 287, the holdings of many jurisdictions are summarized: ''Where, as is often the case, the articles provide that the partnership shall not be dissolved by the death of a partner, such provision will be given effect by the courts''.

(4)   The complaint alleged that the surviving partner would have a life estate in the interest of the deceased partner, the allegation to such effect being, ''.  .  .  that upon the death of either partner or joint adventurer, the survivor would hold and have the full use and benefit of all of said partnership or joint adventure property until his or her death  .  .  .''  This allegation did not make the complaint fatally defective *on demurrer.*  The matter of one partner making disposition of his interest in the partnership upon his death is not a matter unknown to this Court.  In *Alexander* v. *Sims, Executor,* 220 Ark. 643, 249 S. W. 2d 832, we had such an agreement before us, which was copied in full in the footnote[2] to that opinion.  We held that the agreement in that case was obtained by fraud and was, therefore, void; but in discussing the agreement we said:

''Absent any question of consideration, testamentary nature, or fraud on a partner or his creditors, spouse, heirs, *etc.,* some courts have upheld a partnership agreement in which each partner agrees that the survivor will receive all of the assets of the partner-

---

[2] In another footnote we cited the following: *McKinnon* v. *McKinnon,* 56 F. 409; *Michaels* v. *Donato* (N. J.), 67 Atl. 2d 911; and other cases cited in the annotations in 73 A.L.R. 983 and 1 A.L.R. 2d 1207. See also 40 Am. **Jur.** 347.

ship, but such an agreement is always subjected to the closest scrutiny to see if the utmost good faith was observed."

(5) The complaint alleged that after the death of the surviving partner, ". . . the partnership or joint adventure would terminate, and all of said property (be) divided equally, one-half to the heirs of the said Joe Dean Goodin, and one-half to the heirs of the said Esther Lidell Sisson Goodin".

This allegation has given us most serious concern, as it may be testamentary in character and not executed in the form and solemnities required of a will. In 40 Am. Jur. 347 the text reads: "A provision in a partnership agreement that on the death of one of the partners his interest in the partnership shall become the property of the other partners is not testamentary in nature, and the fact that the agreement is not executed according to the requirements of the statute of wills does not invalidate it".

Among other cases[3] that we have studied, there is the Alabama case of *Gomez* v. *Higgins,* 130 Ala. 493, 30 So. 417. In that case, Francisco Gomez (the father) made a partnership agreement with his son, Alexander Gomez, and it provided, *inter alia*:

"In the event of the death of F. Gomez, the entire business with all assets, profits, book accounts and money on hand shall become the property of Alexander Gomez during his lifetime, and at his death the said business, together with all assets, profits, book accounts, stock and money on hand shall be divided into three equal parts, as follows: One-third (1/3) to my daughter Florida Gomez, one-third (1/3) to my daughter Romanda

---

[3] In 73 A.L.R. 983 there is an annotation: "Validity, construction, and effect of agreement for disposition of interest in partnership in event of death of partner"; and on page 1000 to 1002 the annotation discusses agreements amounting to a gift of a partnership interest. Then, there is an annotation in 1 A.L.R. 2d 1178: "Provision for post-mortem payment or performance as affecting the instrument's character and validity as a contract"; and on page 1216 *et seq.* the annotation discusses, "Features which, in conjunction with post-mortem provision, make instrument testamentary".

Higgins, and one-third (1/3) to the heirs of the said Alexander Gomez.''

The Alabama Court said that the instrument was a partnership agreement, ''. . . but this did not prevent it being testamentary in character also in some of its provisions, . . . It has the earmarks of a testamentary disposition of the property, such as constrain us to hold, that it did not pass a present estate, but was a testamentary disposition as to the property in question.''

The fundamental and basic distinction between the holdings[4] seems to be this: if the primary purpose of the contract is to merely make a disposition of the partnership assets, then it can be enforced as a contract. But, if the primary purpose of the partnership agreement is to dispose of property after the death of the partners, then the instrument is testamentary and to be valid must have been executed in accordance with the solemnity and requirements for the execution of wills. Even though we have discussed this ''testamentary matter'' in considerable detail, still we do not have to decide on this appeal whether the agreement here involved was testamentary because: (a) if it was testamentary and, therefore, not enforceable, the heirs of Esther Lidell Sisson Goodin might still have a cause of action unless barred by limitations and laches; and (b) if the agreement was not testamentary, the said heirs would not have a cause of action until the death of the life tenant, Joe Dean Goodin. So, in either event, the issue would not be reached on demurrer unless the complaint showed limitations or laches on its face.

(6) The appellees stoutly insist that the demurrer was properly sustained on the basis that Esther Lidell Sisson Goodin died in 1944 and the appellants, as her heirs, did not file this suit until July, 1957. Thus, the appellees claim that limitation and/or laches appear on the face of the complaint and thus can be pleaded

---

[4] In *Hershy* v. *Clark*, 35 Ark. 17, there was an agreement between tenants in common as to the disposition of interest in the event of the demise of either co-tenant. We held that instrument was testamentary. In the case of In Re Gardner's Will, 66 N.Y. Supp. 2d 256, a partnership agreement was held to be testamentary in disposition.

by demurrer. (*Mueller* v. *Light,* 92 Ark. 522, 123 S. W. 646, 31 L. R. A. N. S. 1013; *McGinnis* v. *Less,* 147 Ark. 211, 227 S. W. 398.) But in making such claim we think the appellees have overlooked allegations in the complaint to the effect: (a) that Joe Dean Goodin held a life estate and did not die until 1957; and (b) ". . . that after the death of the said Esther Lidell Sisson Goodin on October 9, 1944, the said Joe Dean Goodin took control of said partnership or joint adventure property, pursuant to their said agreement; that from 1944 until his death on January 11, 1957, the said Joe Dean Goodin held said property as trustee for said partnership or joint adventure using the profits, income and increases therefrom to further expand and increase said holdings; and that he held the same as such trustee for said partnership or joint adventure from that time until his death, at which time said partnership or joint adventure was terminated."

The foregoing allegation is sufficient to prevent limitation or laches from appearing on the face of the complaint, and to require the defendants to assert such defenses by answer, if they so desire.

(7) Finally, there are the claims of third parties which we have not heretofore mentioned. The complaint alleged, that some time before his death, Joe Dean Goodin transferred a portion of the real and personal property of the partnership to third persons. Because of such transfer, it is claimed that limitation and laches apply. These may be good defenses by answer, but not by demurrer: because it does not appear on the face of the complaint that said third persons were *bona fide* purchasers. Even should we hold that Joe Dean Goodin occupied some position equivalent to that of a trustee, defensive pleadings by answer and proof are needed.

In conclusion, we reiterate that we are considering the complaint only on demurrer. Matters of proof are not before us; but on the face of the complaint we conclude that the demurrer should have been overruled. Therefore, the decree is reversed and the cause is re-

manded, with directions to overrule the demurrer and allow further proceedings.

HARRIS, C. J., dissents; JOHNSON, J., not participating.