G. D. NELSON *v.* BERRY PETROLEUM COMPANY ET AL

5-4136                                    413 S. W. 2d 46

Opinion delivered April 3, 1967

*Kenneth Coffelt,* for appellant.

*Keith, Clegg & Eckert* and *Wright, Lindsey & Jennings* and *Mahony & Yocum* and *Catlett & Henderson* and *Smith, Williams, Friday & Bowen,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, G. D. Nelson, a citizen and taxpayer of Arkansas, instituted suit against appellee companies, Berry Petroleum Company, Arkansas Bitumuls Company, Lion Oil, Inc., Humble Oil and Refining Company, The American Oil Company,[1] MacMillan Ring-Free Oil Company, Inc., and Bitucote Products Company, alleging, *inter alia*:

"For several years next before the filing of this suit, the defendants have sold to the State of Arkansas and its Highway Department asphalt for the construction of highways in this State, and during said period this plaintiff believes and therefore alleges:

"That said defendants have purposely, intentionally and fraudulently connived together and entered into a conspiracy to fix prices for said asphalt far in excess of the fair market and customary value thereof in this and adjoining territories. That the defendants have systematically over the years, in an effort to carry out their designed scheme as herein alleged, agreed with one another that they would not compete with each other on asphalt contracts and prices fixed thereunder in the various highway districts of Arkansas.***"

The complaint asserts that appellee companies have received unlawfully in excess of $3 million of taxpayers' money; that the grades and quantities of asphalt sold to the taxpayers of this state have been of a lower grade and quantity than paid for. Appellant prayed for an accounting of appellees' dealings and transactions with the state and its highway department, in order that the amount of

---

[1] By agreement of the parties, and the consent of the court, the cause was dismissed as to Humble Oil and Refining Company, and the American Oil Company.

funds and monies owed the taxpayers by reason of the foregoing allegations might·be determined. To this complaint, appellees filed their several demurrers, and these demurrers were sustained by the court. Appellant elected to stand on his pleading, declining to plead further, and the court thereupon dismissed said complaint. From the decree so entered, appellant brings this appeal. The issue is thus simply whether the complaint stated a cause of action.

In *Quinn* v. *Stuckey, Admr.,* 229 Ark. 956, 319 S. W. 2d 839, this court said:

"At the outset it is well to state the rule for testing a case on demurrer. In *Tyler* v. *Morgan,* 214 Ark. 667, 217 S. W. 2d 606, we said:

" 'Appellees demurred to this complaint on the ground that it did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer and this appeal followed.

" 'The question presented is: Treating all allegations in the complaint, which are well pleaded, as true, and construing them liberally in favor of the pleader, as we must, was a cause of action stated? We hold that there was. "It is not necessary that the complaint should state a cause of action in every particular, for if it contains the substance of a cause of action imperfectly stated, the presumption would be that the defects in the complaint were cured by the proof at the trial." *Clow* v. *Watson,* 124 Ark. 388, 187 S. W. 175.' "

Likewise, in *Dodson* v. *Abercrombie,* 212 Ark. 918, 208 S. W. 2d 433, we stated:

"It is well settled that in testing the sufficiency of a pleading by general demurrer every reasonable intendment should be indulged to support it. If the facts stated

in the pleadings, together with every reasonable inference therefrom constitute a cause of action, or a valid defense, then a demurrer should be overruled. *Ark. Life Ins. Co.* v. *Am. Nat. Ins. Co.,* 110 Ark. 130, 161 S. W. 136; *Neal* v. *Parker,* 200 Ark. 10, 139 S. W. 2d 41.''

With the rule as thus stated, we have reached the conclusion that the complaint did state a cause of action, and accordingly our discussion will be directed to the points relied upon by appellees in their argument supporting the action of the Chancellor in sustaining the demurrers. Four different arguments are advanced, and we proceed to a discussion of these points, though not in the order listed.

It is asserted that the court has no jurisdiction of the cause, it being the position of appellees that the instant complaint is no more than an attempt to assert a cause of action based upon the Sherman Anti-Trust Act and the Clayton Act. We agree that state courts have no jurisdiction in federal antitrust actions, and many federal cases so hold. However, we do not agree that the instant suit is simply an attempt to seek recovery under these federal acts. Instead, it appears to be an action instituted pursuant to Article XVI, Section 13, of the Constitution of the State of Arkansas, which reads, as follows:

''Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.''

This is a broad provision of our Constitution, and has been utilized in various types of actions. The case of *Starnes* v. *Sadler,* 237 Ark. 325, 372 S. W. 2d 585, contains a comprehensive discussion of the meaning of the term, ''Illegal Exaction.'' There, we said:

''This Chancery Court action was instituted pursuant to Article XVI, Section 13, of the Constitution of the

State of Arkansas, and the Chancery Court had jurisdiction of this Constitutional proceeding. This Constitutional provision is self-executing, and imposes no terms or conditions upon the right of the citizens there conferred. *Samples* v. *Grady,* 207 Ark. 724, 182 S. W. 2d 875; 8 Ark. Law Review 129 (1954).

" 'Illegal Exaction' under the Arkansas Constitution means both direct and indirect illegal exactions, thus comprehending any attempted invalid spending or expenditure by any government official, *Quinn* v. *Reed,* 130 Ark. 116, 197 S. W. 15; *Farrell* v. *Oliver,* 147 Ark. 599, 226 S. W. 529.

" 'Illegal Exaction' means far more than the mere collection of unlawfully levied taxes. With little limitation, almost any misuse or mishandling of public funds may be challenged by a taxpayer action. Even paying too much for cleaning public outhouses has been held by our courts as basis for a taxpayer's right to relief, *Dreyfus* v. *Boone,* 88 Ark. 353, 114 S. W. 718. Any arbitrary or unlawful action exacting taxes or tax revenues may be restrained and annulled by a taxpayer affected by such procedure, *Bush* v. *Echols,* 178 Ark. 507, 10 S. W. 2d 906; *McClellan* v. *Stuckey,* 196 Ark. 816, 120 S. W. 2d 155; *Park* v. *Hardin,* 203 Ark. 1135, 160 S. W. 2d 501; *Brookfield* v. *Harahan Viaduct Improvement District,* 186 Ark. 599, 54 S. W. 2d 689.

"The remotest effect upon the taxpayer concerning any unlawful act by a tax supported program or institution may be enjoined under Article XVI, Section 13, of the Constitution of the State of Arkansas, *Green* v. *Jones,* 164 Ark. 118, 261 S. W. 43.* * *

"Our Court thoroughly discussed 'illegal exaction' in the case of *Arkansas Association of County Judges* v. *Green,* 232 Ark. 438, 338 S. W. 2d 672, wherein jurisdiction of the Chancery Court was questioned and illegal exaction was involved. This Court stated that the theory

of an illegal exaction does not necessarily involve an illegal tax citing the case of *Lee County* v. *Robertson*, 66 Ark. 82, 48 S. W. 901, wherein the Court was not dealing with illegal tax, but with the question of illegal use or appropriation of county funds.* * *

"The case of *Arkansas County Judges Association* v. *Green*, cited the case of *Ward* v. *Farrell*, 221 Ark. 636, 253 S. W. 2d 353, wherein this Court stated concerning the involved Constitutional provision:

" 'There is eminent authority for holding, even in the absence of an express provision of the Constitution, such as referred to above, that a remedy is afforded in equity to taxpayers to prevent misapplication of public funds on the theory that the taxpayers are the equitable owners of public funds and that their liability to replenish the funds exhausted by the misapplication entitles them to relief against such misapplication.' "

In *Revis* v. *Harris*, 217 Ark. 25, 228 S. W. 2d 624, suit was instituted by Owen Revis, a citizen and taxpayer, against Sam Harris for recovery of money, which Revis alleged was illegally paid to Harris while he (Harris) was acting as Municipal Judge. Pursuant to a motion to dismiss the complaint filed by Harris, the court overruled so much of the motion as sought to strike the prayer seeking injunctive relief, but granted the motion as to that part of the complaint seeking recovery of the funds allegedly illegally paid to Harris. On appeal to this court, we reversed this holding, stating:

"In that case [*Sitton* v. *Burnett*, 216 Ark. 574, 226 S. W. 2d 544], Burnett, a citizen and taxpayer, brought suit to recover salary illegally paid Sitton by the second class City of Clinton, while serving as a *de facto* marshal. There it was alleged Burnett was not a proper party to bring the suit and that equity was without jurisdiction. We there held that Burnett, as a resident and

taxpayer, was a proper party to bring this suit since taxpayers are the equitable owners of public funds and may sue to prevent any illegal exactions whatever, within the meaning of Art. 16, § 13, of our Constitution.

"So here, if appellant's allegations in this complaint to the effect that appellee had been paid sums of money illegally by the City of Clarksville while acting as Municipal Judge, and for other services, without right or authority of law, were true, appellant stated a cause of action and was a proper party to initiate the suit.

"Chancery had jurisdiction and the power to grant affirmative as well as injunctive relief in the circumstances. *Grooms* v. *Bartlett*, 123 Ark. 255, 185 S. W. 282."

In *Grooms* v. *Bartlett, supra,* this court stated:

"The taxpayers of a county are the persons from whom the public revenues are obtained and are directly interested in protecting the same. They are proper persons to maintain suits against public officers to prevent or remedy misapplication of the public funds, and in such cases chancery has the power to grant affirmative as well as injunctive relief. Chancery has not only power to prevent such wrongs, but it has power to require reparation for that which has been done."

We think these cases make it clear that the Chancery Court had jurisdiction to hear this suit.[2]

It is also asserted by appellees that the complaint

[2]There is also a state law, Ark. Stat. Ann. § 70-101 (Repl. 1957) prohibiting corporations, partnerships, individuals, "or other association or person whatsoever" from entering into combinations to fix prices, maintain certain prices, or to fix or limit the amount or quantity of certain articles. This is defined as a conspiracy to defraud. Aside from any statutory authority, an attempted monopoly or an agreement in restraint of trade, was a criminal conspiracy at common law. *Hammond Packing Company* v. *State,* 81 Ark. 519, 100 S. W. 407.

does not state facts sufficient to constitute a cause of action. Again, we are unable to agree with the contention made. In the first phase of this argument, appellees mention that there is a complete absence of any allegation in the complaint that appellant, or anyone else, had made demand upon the State Highway Commission or the State of Arkansas, or its attorneys, to institute proceedings against appellee companies. Appellees contend that it is necessary that this suit be brought by the Attorney General, or at least he must have refused to bring it, before a taxpayer may act, and it is pointed out that there is no allegation that the Attorney General refused to bring the suit. Several earlier cases are cited in support of this argument,[3] but the controlling case on this point is *Samples* v. *Grady, supra.* There, we stated:

"Unlike § 23 of Art XIX of the Constitution, § 13 of Art. XVI of the Constitution is self-executing, and requires no enabling act or supplementary legislation to make its provisions effective. This section of the Constitution last mentioned confers the right upon any citizen to institute suits in behalf of himself and all others interested to protect against the enforcement of any illegal exaction whatever.

"This is made a class suit in which any citizen may for the benefit of himself, and all other interested citizens, and any citizen would have the right to be made a party, and this is a right which other citizens should exercise if there were any reason to apprehend that the suit was collusive between the parties, plaintiff and defendant.

"This § 13 of Art. XVI of the Constitution is not

---

[3]*Griffin* v. *Rhoton*, 85 Ark. 89, 107 S. W. 380; *Gladish* v. *Lovewell*, 95 Ark. 618, 130 S. W. 579; *Oats* v. *Smith*, 194 Ark. 812, 109 S. W. 2d 955; *Etheridge* v. *Riley*, 196 Ark. 713, 118 S. W. 2d 665. The last two cases were suits to collect on the bond of officeholders, and the actions were brought in compliance with specific statutory provisions.

only self-executing, but it imposes no terms or conditions upon the right of the citizen there conferred, and we would be required to write something into the constitution, which does not there appear, if we hold that this right was conditional. However, the General Assembly has the power to prescribe the practice to be pursued in its enforcement.

"We do not hold that the attorney general, where the interest of the state is involved, or the prosecuting attorney, in appropriate cases, might not institute such an action; but we do hold that the right of a citizen is not dependent upon the inaction of these officers, or either of them. We have rather two methods whereby the interests of affected inhabitants may be protected. We find nothing in § 13 of Art. XVI of the Constitution making the refusal of any officer to bring this suit a condition precedent to the exercise of a right given without condition imposed upon its exercise."[4]

Under the same point, it is also asserted that, though alleging that appellees have defrauded the taxpayers of Arkansas, there are no particular facts pleaded to substantiate this statement, and that, standing alone, the facts pleaded constitute no more than a conclusion of the pleader. The simple answer to this contention is found in the recent case of *Brewer* v. *Hawkins,* 241 Ark. 460, 408 S. W. 2d 492 (Nov. 1966). In comparing the complaint in that case (the allegations being set out in full) with the complaint in the instant case, it is immediately apparent that the allegations before us are as specific as those in *Brewer*. For that matter, it is evident that it would have been difficult, if not well nigh impossible, for Nelson to have alleged specific acts relied upon. This information could hardly be obtained until after institution of the suit. Of course, if appellees felt that the allegations were vague and should be plead-

---

[4]The opinion also distinguishes this case from *Gladish* v. *Lovewell, supra.*

ed more distinctly and clearly, a motion to make more definite and certain could have been filed. This was not done.

It is also contended that Nelson, as a citizen and taxpayer, does not have legal capacity to maintain the action. The cases cited in our discussion of the other points answer this contention, and no additional comment is necessary.

Finally, it is alleged that there is a defect of parties plaintiff, it being asserted that the Arkansas Highway Department was a necessary party. We have already cited sufficient authority to the effect that the taxpayer has a perfectly valid right to institute an action to recover public funds, and this being true, the right is not dependent upon any state agency becoming a party. Of course, there is nothing to prevent the Arkansas Highway Department from intervening in the case, and it might well do so; for that matter, the Attorney General, on behalf of the state, is entitled to intervene. Appellees do not make clear just how appellant could force the Highway Department to become a plaintiff, but, from what has been said, it is evident that the department is not an essential party to the litigation.

We reiterate, in effect, the statement made at the outset, *viz.*, that we are only called upon to determine whether the complaint was good as against the demurrers filed, and, under the cases cited on that point, we unhesitatingly reply in the affirmative.

The decree is reversed, and the cause remanded, with directions to proceed in a manner not inconsistent with this opinion.