Jim BEAM and Bill BEAM,
d/b/a BEAM BROS. CONTRACTORS *v.*
MONSANTO COMPANY, Inc., a
Corporation

75-148                                                    532 S.W. 2d 175

Opinion delivered February 9, 1976

*Batchelor & Batchelor,* by: *Fines F. Batchelor, Jr.,* for appellants.

*William M. Stocks,* for appellee.

J. FRED JONES, Justice. This is an appeal by Jim Beam and Bill Beam, d/b/a Beam Brothers Contractors, Inc., from a circuit court order sustaining a demurrer to their counterclaim, as amended, in a suit filed by the appellee, Monsanto Company, Inc., for balance owned on open account. The final demurrer from which comes this appeal was on the grounds that the counterclaim, as amended, failed to state a cause of action under Ark. Stat. Ann. §§ 70-301—70-

307 (Repl. 1957), and because the relief sought under the counterclaim, as amended, was barred by the statute of limitations. The trial court sustained the demurrer on both grounds.

The points on which the appellants rely for reversal are designated as follows:

"Appellants' pleadings state a cause of action in fraudulent misrepresentation in sales resulting in damages.

The trial court erred in holding that the Arkansas Unfair Practices Act, Ark. Stats. 70-301 — 70-314 has no application to vertical competition, by sustaining demurrer to prayer for relief and damages.

The trial court erred in holding that the statute of limitations had run upon claims of appellants, as a matter of law, based upon the pleadings.

The trial court erred in refusing to compel discovery by requiring appellee to respond to interrogatories served.

The trial court erred in denying summary judgment in favor of appellants.

Under Arkansas Practice, a demurrer may not be filed after the filing of an answer in the action."

This litigation was commenced on March 25, 1970, when Monsanto filed suit against Beam Brothers for balance on account, for oil and related products purchased and used by Beam Brothers in mixing asphalt concrete paving material at their plant at Fort Smith and later at Prescott, Arkansas. By amendment filed June 8, 1970, Monsanto alleged that Beam Brothers was indebted to Monsanto in the amount of $14,341.24 for merchandise and material furnished between March 19, 1969, and September 30, 1969. A number of amendments, motions, interrogatories and answers thereto were filed by the parties and on November 30, 1971, Beam Brothers filed a separate answer and counterclaim designated

"Cross-Complaint" in which they alleged an assignment which should have been applied on the alleged indebtedness, and otherwise they denied the allegations in the complaint. In paragraph III of their answer Beam Brothers alleged as follows:

"These defendants further specifically allege that the plaintiff specifically represented to defendants that it was selling to them the A C Oil for the making of asphalt concrete by said defendants at as low a price as it was selling to anyone else, when, in fact, from approximately May, 1966, through the last purchase of said oil from plaintiff, which plaintiff alleges to have been September 25, 1969, plaintiff was charging these defendants more per ton for said oil than it was charging to other customers who were buying such materials of like quantity and quality in different locations, sections, communities, cities, and portions thereof in this State with the intent to destroy competition of these defendants who were regular established dealers in such commodities, products and services and prevent these defendants from competing with other persons, firms and corporations, in violation of Ark. Stats. 70-301 and following, and that any amounts which plaintiff claims to be owed to it, in fact any be found to be owed, would be owed under a contract, expressed or implied, and made by and between persons, firms and corporations in violation of the provisions of Ark. Stats. 70-301 through 70-307, therefore under the provisions of Ark. Stats. 70-309, said contract is illegal and no recovery can be had thereon or by reason thereof."

The designated cross-complaint then alleged in part as follows:

"These defendants were previously engaged in contracting business which includes bidding upon Arkansas Highway Department, highway jobs, building streets, driveways, parking areas and other improvements of asphalt construction, and as a part thereof operated a plant which made asphalt from its various components including, but not limited to an A C type oil which was

purchased from plaintiff, sand gravel, and other in-
gredients, from [for] such manufacturing said asphaltic
cement which was used in their business. While this
business was originally commenced in the area of Fort
Smith, Arkansas, it was moved to Prescott, Arkansas,
where it operated at all times material hereto.

Said plaintiff being a person, firm or corporation doing
business in the State of Arkansas and engaged in the
production, manufacture, distribution or sale of any
commodity or product, or service or output of a service
trade, or general use or consumption, unlawfully, and
with the intent to destroy the competition of a regularly
established dealer in such commodity, product of ser-
vice, did discriminate between different sections, com-
munities and cities and portions thereof, and between
different locations in such sections, communities, cities
and portions thereof in this State by selling and fur-
nishing said commodity, product and service at a lower
rate to one section, community and city, or any portion
thereof, and in one location in such section, community
and city and any portion thereof than in another, after
making allowance for difference, if any, in the grade or
quality, quantity and in the actual cost of transportation
from point of production or manufacture. That by
reason thereof, these defendants were unable to com-
petitively bid upon various jobs, and particularly Arkan-
sas State, Federal Aid Highway jobs, and by reason
thereof, these defendants were, in fact, completely put
out of business.

By reason of such unlawful and wrongful actions as
herein before set out on the part of plaintiff, these defen-
dants were damaged in the amount of $15,000.00 by
over charge upon said oil products, and were caused to
lose their entire business, and presently have numerous
judgments and liens filed against them, are unable to
bond jobs, which is essential in their business operation,
have lost all of their equipment and earnings, together
with real estate, to their damage in the amount of $750,-
000.00, or a total actual damages to these defendants in
the amount of $765,000.00, and therefore, under the

provisions of Ark. Stats. 70-301 and following, and 70-310 in particular, these defendants are entitled to damages against plaintiff in the amount of three times the amount of the actual damages, or a total of $2,295,-000.00.

WHEREFORE PREMISES CONSIDERED, the defendants, Jim Beam and Bill Beam, respectively pray that the plaintiff, Monsanto Company, Inc., a corporation, take nothing against them by reason of its complaint herein filed, and that they have judgment against said plaintiff, Monsanto Company, Inc., a corporation, in the amount of $2,295,000.00, the same being three times the amount of their actual damage of $765,000.00, and that they have all other just and legal relief to which they might be entitled."

On January 3, 1972, Monsanto filed a reply and demurrer to the counterclaim. The reply denied the allegations set out in the counterclaim and for demurrer Monsanto alleged as follows:

"1. The counterclaim, styled cross-complaint, fails to state a cause of action under Ark. Stats. Section 70-301 through 70-307.

2. The relief sought in the counterclaim is barred by the appropriate statute of limitations, and particularly Ark. Stats. Section 37-204."

On January 7, 1972, Beam Brothers filed a response to Monsanto's reply and demurrer in which they reasserted that Ark. Stat. Ann. §§ 70-303 — 70-313 were applicable to the case and under paragraph III of this instrument they stated as follows:

"Although these defendants, Beam, carefully studied and attempted to determine what prices were being charged, the plaintiff did fraudulently conceal its actions, and using all efforts available to them, to their knowledge and the exercise of diligence, these defendants were unable to determine or learn of the wrongful

acts and concealment of plaintiff until on or about the 1st day of June, 1970, and therefore, the Statute of Limitations did not begin to run against them until that time, and this being a statutory right not otherwise provided for, the five year Statute of Limitations of Ark. Stats. 37-213 applies."

On May 31, 1972, the trial court sustained the demurrer with leave to amend. On June 9, 1972, Beam Brothers filed their first amendment reciting substantially the same allegations as in their original counterclaim. Monsanto again demurred to the amended counterclaim and the demurrer was again sustained by the trial court with leave to amend. On September 10, 1973, Beam Brothers filed their second amendment to their counterclaim alleging in part as follows:

"Plaintiff, by and through its agents, servants, and employees, acting within the scope of their agency, service and employment, did represent to defendants, that plaintiff was selling to defendants, materials at the same price the same were being sold to other contractors in the same business, at the time knowing said representations to be false, expecting plaintiffs to rely thereon, to their detriment, which they reasonably did, and such false representations and facts being material, and contracts for various jobs, including Arkansas State Highway jobs, were bid on the basis of such representations as being a principal ratio and percentage of materials to be furnished, thereby intentionally causing defendants to overbid upon jobs in proportion to such overcharge for their materials, and fail to obtain jobs, which resulted in the intended loss of defendants' entire business operation, resulting therefore in actual damages to defendants in the amount of $765,000.00, and entitling said defendants to punitive damages against plaintiff in the amount of $1,530,000.00, and although defendants used due diligence, they were unable to learn of such wrongful actions upon plaintiff's part until less than 3 years prior hereto."

Monsanto filed an amended reply and answer to the second amendment stating that it adopted all former pleadings;

that the amended complaint did not state a cause of action; that the action stated was barred by the statute of limitations, and that it denied the allegations in the counterclaim as amended by second amendment. Following additional motions and other pleadings not germane to the issues on this appeal, Monsanto filed an additional demurrer on the same grounds as the previous demurrers and this demurrer was also sustained by the order appealed from, which recited as follows:

"1. The counterclaim, as amended by all amendments, fails to state a cause of action under Ark. Stats. Section 70-301 through 70-307.

2. The relief sought by the counterclaim as amended by all amendments is barred by the applicable statute of limitations."

Ark. Stat. Ann. §§ 70-303 — 70-313 (Repl. 1957) is the "Unfair Practices Act" and it simply does not apply to the alleged facts in this case. Section 70-301 provides as follows:

"It shall be unlawful for any person, firm, or corporation, doing business in the State of Arkansas and engaged in the production, manufacture, distribution or sale of any commodity or product, or service or output of a service trade, of general use or consumption, or the product or service of any public utility, with the intent to destroy the competition of any regular established dealer in such commodity, product or service or to prevent the competition of any person, firm, private corporation or municipal or other public corporation, who or which in good faith, intends and attempts to become such dealer, to discriminate between different sections, communities or cities or portions thereof, or between different locations in such sections, communities, cities or portions thereof in this State, by selling or furnishing such commodity, product or service at a lower rate in one section, community or city, or any portion thereof, or in one location in such section, community, or city or any portion thereof, than in another after making allowance for difference, if any, in the grade or quality,

quantity, and in the actual cost of transportation from the point of production, if a raw product or commodity or from the point of manufacture, if a manufactured product or commodity. This act [§§ 70-301 — 70-314] shall not be construed to prohibit the meeting in good faith of a competitive rate, or to prevent a reasonable classification of service by public utlitiès for the purpose of establishing rates. The inhibition hereof against locality discrimination shall embrace any scheme of special rebates, collateral contracts or any device of any nature whereby such discrimination is, in substance or fact, effected in violation of the spirit and intent of this act."

Section 70-310 provides as follows:

"Any person, firm, private corporation or municipal or other public corporation, or trade association, may maintain an action to enjoin a continuance of any act or acts in violation of sections 1 to 7, inclusive [§§ 70-301 — 70-307], of this act and, if injured thereby, for the recovery of damages. If, in such action, the court shall find that the defendant is violating or has violated any of the provisions of sections 1 to 7, inclusive [§§ 70-301 — 70-307], of this act, it shall enjoin the defendant from a continuance thereof. It shall not be necessary that actual damages to the plaintiff be alleged or proved. In addition to such injunctive relief, the plaintiff in said action shall be entitled to recover from the defendant three [3] times the amount of the actual damages, if any, sustained.

Any defendant in an action brought under the provisions of this section or any witness desired by the State, may be required to testify under the provisions of sections 3110 - 4137-4139-4140-4141-4142-4143-4150-4151-4152-4153-4192-7151 of Crawford and Moses' Digest of the Statutes as amended of this State, in addition the books and records of àny such defendant may be brought into court and introduced, by reference, into evidence; provided, however, that no information so obtained may be used against the defendant as a basis

for a misdemeanor prosecution under the provisions of sections 1 to 7, inclusive [§§70-301 — 70-307], and 11 [§70-311] of this act."

The purpose of the Act is set out in § 70-313 as follows:

"The Legislature declares that the purpose of this act [§§ 70-301 — 70-314] is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented. This act shall be literally construed that its beneficial purposes may be subserved."

We now consider the appellants' points in the order listed. As to appellants' first point, both parties agree that the last counterclaim pleaded by the appellants in their amendment on September 10, 1973, alleged common law fraud or deceit. The three-year statute of limitations applies to fraud and deceit. Ark. Stat. Ann. § 37-206 (Repl. 1962); *White* v. *McBride,* 245 Ark. 594, 434 S.W. 2d 79 (1968). So the key issue on this point is whether the appellants alleged a cause of action for fraud or deceit in their first counterclaim as amended on November 29, 1971 and on June 9, 1972. The counterclaim as thus amended obviously did not allege such cause of action. Consequently the appellants' action for deceit only existed prior to September 10, 1973, if their September 10, 1973, amendment or counterclaim was merely an expansion or amplification of an allegation of deceit expressed in their first or second counterclaim and not an introduction of a new cause of action. *Bridgman* v. *Drilling,* 218 Ark. 772, 238 S.W. 2d 645 (1951). We are of the opinion that the amendment of September 10, 1973, stated a new cause of action and the trial court was correct in stating that, "The relief sought by the counterclaim as amended by all amendments is barred by the applicable statute of limitations."

The appellants argue that the trial court erred in granting this demurrer because in testing a case on demurrer the court is required to construe allegations in the pleadings

liberally in favor of the pleader. Citing *Quinn v. Stuckey,* 229 Ark. 956, 319 S.W. 2d 839 (1959). In *Quinn* this court said:

"At the outset it is well to state the rule for testing a case on demurrer. In *Tyler* v. *Morgan,* 214 Ark. 667, 217 S.W. 2d 606, we said:

'Appellees demurred to this complaint on the ground that it did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer and this appeal followed.

The question presented is: Treating all allegations in the complaint, *which are well pleaded,* as true, and construing them liberally in favor of the pleader, as we must, was a cause of action stated? * * *' " (Emphasis added).

To be well pleaded fraud or deceit must be specifically alleged. In *Burns v. Burns,* 199 Ark. 673, 135 S.W. 2d 670 (1940), we said:

"This court has many times held that where fraud is relied upon the complaint must state something more than mere conclusions, but the facts relied upon as constituting the fraud must also be clearly set forth in the complaint to justify the court in overruling a demurrer."

In the early case of *McIlroy* v. *Buckner,* 35 Ark. 555 (1880) this court said:

"It is not sufficient to plead fraud generally, or merely to characterize actions as fraudulent. The facts and circumstances constituting the fraud should be set forth. There should be some concealment, misrepresentation, craft, finesse, or abuse of confidence, by which another is misled, to his detriment; and these, or some of them, must be alleged and proved. Mere epithets, or adverbs characterizing conduct, which in itself, may be innocent, amount to nothing."

This court has adhered to the general rule that fraud, as an

affirmative defense, must be specifically pleaded by the party claiming it. *Bridges* v. *Harold L. Schaefer, Inc.*, 207 Ark. 122, 179 S.W. 2d 176 (1944); *Van Houten* v. *Better Health Ins. Assn. of America*, 238 Ark. 815, 384 S.W. 2d 465 (1964).

Prosser, Law of Torts 4th ed. § 105 at p. 685 states the elements of the tort cause of action in deceit as follows:

"1. A false representation made by the defendant. In the ordinary case, this representation must be one of fact.

2. Knowledge or belief on the part of the defendant that the representation is false — or, what is regarded as equivalent, that he has not a sufficient basis of information to make it. This element often is given the technical name of 'scienter.'

3. An intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation.

4. Justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it.

5. Damage to the plaintiff, resulting from such reliance."

In *Cleveland* v. *Biggers*, 163 Ark. 377, 260 S.W. 432 (1924), this court approved a pleading of fraud as sufficient to support damages, saying:

"We think, however, that a cause of action for damages was stated. By fair intendment the complaint does allege a representation and its falsity, that the vendees relied upon said representation, and had a right so to rely, and were deceived thereby, that the false representations were material to the contract, and resulted in plaintiffs' damage, and were made to accomplish that purpose."

An examination of the appellants' counterclaim as amended by the first and second amendments reveals that they neither specifically set out the misrepresentations, nor

pleaded the elements of deceit. They did not state that Monsanto's representation as to its price of A C oil was false at the time made, or that price was material to the transaction, or that appellants relied upon this representation. In their third counterclaim appellants specifically allege these elements. However, the trial judge was correct in determining that the appellants' third counterclaim was an attempt to bring in a new cause of action barred by the statute of limitations.

As to the appellants' second point, the order of the trial court stated, "The counterclaim, as amended by all amendments, fails to state a cause of action under Ark. Stats. Section 70-301 through 70-307." The appellee argued in the trial court and also on this appeal that since it was not in competition with the appellants, there was no violation of the Arkansas Unfair Practices Act. Appellants argue that as buyers of appellee's goods, they were in "vertical competition" with appellee and that the trial court erre̱d in not considering this "vertical competition." The appellants' argument is without merit. Aside from the purpose as recited in the statute, § 70-313, *supra,* the parties have cited three cases in which this court has also stated the purpose of the statute. *Baratti* v. *Koser Gin Co.,* 206 Ark. 813, 177 S.W. 2d 750 (1944); *Concrete, Inc.* v. *Arkhola Sand & Gravel Co.,* 228 Ark. 1016, 311 S.W. 2d 770 (1958); *Concrete, Inc.* v. *Arkhola Sand & Gravel Co.,* 230 Ark. 315, 322 S.W. 2d 452 (1959). All three of these cases involved competition between sellers. In each case this court said that the Unfair Practices Act makes it unlawful to lower prices in certain areas with the intent to destroy competition. But, appellants argue these cases cannot be controlling in a situation involving "vertical competition"; that is, competition between ̱seller and buyer. The reason appellants' argument is without merit is found not in case authority, but in the construction of the statute. The Arkansas Unfair Practices Act is penal in nature and imposes liabilities unknown at common law; therefore, it must be strictly construed in favor of those upon whom the burden is sought to be imposed, and that which is not clearly expressed will not be taken as intended. *Davis* v. *Fowler,* 230 Ark. 39, 320 S.W. 2d 938 (1959). The first section of the Unfair Practices Act, § 70-301, *supra,* applies to .the,

". . . production, manufacture, distribution or sale of any commodity . . . of general use or consumption . . . with the intent to destroy the competition of any regular established *dealer in such commodity* . . . or to prevent the competition of any person, firm . . . [or] corporation . . . who or which in good faith, *intends and attempts to become such dealer*, to discriminate between different sections . . . in this State, by selling or furnishing such commodity, product or service at a lower rate in one section . . . than in another. . . ." (Our emphasis).

It is apparent that the statute is intended to foster competition for the primary benefit of the general public by protecting dealers, especially small dealers from unfair competition by large dealers. The term "dealer" is not defined in the statute but its common meaning, as defined in Random House Dictionary, is "one who buys and sells articles without chang:ng their condition." Appellants' argument for "vertical competition" would broaden the Act to not only protect dealers, those who buy and sell, from unfair competition by other dealers, but would also protect buyers from competition by the various and sundry business buyers who use and purchase the same or similar product for use-in their various businesses. The concern of the Unfair Practices Act is to prevent goods which are unfairly priced below the goods of competitors from temporarily entering the market and forcing the competitor out of business, thus gaining a monopoly within a given locality after which time the prices may be raised without limit and without competition to the final detriment of the public interest. The emergency clause of the Unfair Practices Act recites as follows:

"The sale at less than cost of goods obtained at forced, bankrupted, close out, and other sales outside of the ordinary channels of trade is destroying healthy competition and thereby forestalling recovery. If such practices are not immediately stopped many more businesses will be forced into bankruptcy, this increasing the prevailing condition of depression. In order to prevent such occurrences it is necessary that this act go into effect immediately. Approved March 17, 1937."

What we have already said disposes of the appellants' third and fifth points, and we find no merit to the appellants' fourth point under the facts in this case.

Under appellants' sixth point they contend that under Arkansas practice a demurrer may not be filed after the filing of an answer in the action. The appellants overlook the fact that appellee's response to appellants' second amendment to Separate Answer and Counterclaim, entitled Plaintiff's Amended Reply and Answer filed October 12, 1973, included a demurrer. It is a well settled rule of law that a pleading will not be judged by what it is called but by what it contains. *Smith Chickeries* v. *Cummings*, 224 Ark. 743, 276 S.W. 2d 48 (1955); *Askew* v. *Murdock Acceptance Corp.*, 225 Ark. 68, 279 S.W. 2d 557 (1955); *Stroud* v. *Barksdale Lbr. Co.*, 229 Ark. 111, 313 S.W. 2d 376 (1958); *Little Rock Land Co.* v. *Raper*, 245 Ark. 641, 433 S.W. 2d 836 (1968). Paragraph three of the appellee's response contained the classic statement for a general demurrer. "Plaintiff further states that the counterclaim as amended fails to state a cause of action."

The judgment is affirmed.