CONCRETE, INC. *v.* ARKHOLA SAND AND GRAVEL CO.

5-1821                                    322 S. W. 2d 452

Opinion delivered March 30, 1959.

*Hardy W. Croxton,* for appellant.

*Wade & McAllister* and *Daily & Woods,* for appellee.

SAM ROBINSON, Associate Justice. Appellant, Concrete, Inc., is a domestic corporation engaged in the ready-mixed concrete business, with offices at Rogers, Arkansas. Appellee, Arkhola Sand & Gravel Company, a domestic corporation, is also engaged in the ready-mixed concrete business and has offices located at Fort Smith, Fayetteville, and Lowell, Arkansas.

Appellant commenced this action against the appellee, for an injunction and treble damages, in the Benton County Circuit Court, under the "Unfair Practices Act," Act 253 of 1937 (Ark. Stat. § 70-301). The trial court sustained appellee's demurrer, holding in effect that the Act was unconstitutional, and dismissed the complaint.

The complaint, among other things, alleges that the prices charged by appellee for its ready-mixed concrete in the Rogers and Springdale territory are at lower rates than those charged in other sections and cities served by appellee, after making allowance for transportation, grade, quality and quantity, and that the sale of said ready-mixed concrete at such rates is made with the intent to destroy the competition of appellant, a regularly established dealer.

The "Unfair Practices Act" makes it unlawful for one engaged in the distribution of a commodity of general use or consumption to discriminate between different sections, communities or cities or portions thereof, with intent to destroy competition, by selling at a lower rate in one such section than in another after making allowance for difference in grade, quality or quantity, and the actual cost of transportation. The injured person is given the right to treble damages and an injunction (Ark. Stat. § 70-310).

Although appellee candidly points out that the "Unfair Practices Act" has been upheld against an attack on its constitutionality in *Baratti* v. *Koser Gin Co.,* 206 Ark. 813, 177 S. W. 2d 750, and that similar acts have been upheld by the decisions of other states, it is argued that the doctrine embraced in the Act has never been and should never become a part of Arkansas law. The contention that the Act is not a proper exercise of the police power is without merit. In addition to the *Baratti* decision, our Constitution, Art. 2, § 19, provides: "Perpetuities and monopolies are contrary to the genius of a republic, and shall not be allowed; . . ."

The Supreme Court of Nebraska, in *State* v. *Drayton*, 82 Neb. 254, 260, 117 N. W. 768, 770, in upholding a similar statute regulating monopolies under the police power of the state, said: ". . . It is within the knowledge of all that in many instances persons engaged in the sale of commodities in general use by the people have depressed prices in one locality where there was competition and increased them in others where there was none, thus avoiding loss, until the competitor was driven out of business, when prices would be raised to an unreasonable and oppressive extent, and the people of the district or community supplied from that point would be the sufferers. It was evidently the intention of the legislature to prevent that course of conduct if resorted to for that purpose. The law afforded no protection from the injurious effects of such predatory course. If no protection could be furnished to the people who were compelled to purchase the commodities, it would be easily within the range of possibilities for one person or corporation to practically control the whole commerce of a community, a county, or even the state, exacting such prices as greed might dictate, and yet seeing to it that no others should be allowed to engage in a similar business as competitors . . ."

Appellee, citing such cases as *Noble* v. *Davis*, 204 Ark. 156, 161 S. W. 2d 189, and *Union Carbide & Carbon Corp.* v. *White River Distributors, Inc.*, 224 Ark. 558, 275 S. W. 2d 455, contends that this Court has never upheld price fixing or other regulation of a business of common right in the absence of a finding that it was impressed with a public interest.

The appellee's assumption that this is a price fixing statute is erroneous. *Dunnell* v. *Shelley*, 38 Cal. App. 2d 118, 100 P. 2d 830. The purpose of the Act, as stated in Ark. Stat. § 70-313, is to safeguard against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory practices by which fair and honest competition is destroyed or prevented. We think the means

adopted are reasonable and appropriate to promote the purposes mentioned.

It is true that this Court, in *Baratti* v. *Koser Gin Co.*, went into the question of whether a cotton gin was impressed with a public interest and thus subject to regulation under the police power, but it was there pointed out that one who devotes his property to a use in which the public has an interest, in effect grants to the public an interest in that use and must submit to be controlled by the public, for the common good, to the extent of the interest thus created. Thus it logically follows that a commodity *of general use or consumption,* as regulated by the "Unfair Practices Act," is impressed with a public interest for purposes of regulation under the police power.

Appellee says the Act is void, under Art. 2, § 8, of the Constitution of Arkansas, because it fails to define with reasonable certainty the acts that it declares unlawful. The particular language complained of as being vague and indefinite is "to discriminate between different sections, communities or cities or portions thereof, or between different locations in such sections, communities, cities or portions thereof in this State." Statutes with somewhat similar language were held void for indefiniteness in *State* v. *Standard Oil Co. of New Jersey,* 195 S. C. 267, 10 S. E. 2d 778, and *People* v. *Austin,* 301 Mich. 456, 3 N. W. 2d 841.

In those cases we think the courts overlooked the evils to be remedied by the Act—*i. e.,* to prevent a business from destroying competition by depressing prices in one locality where there is competition and offsetting the loss by raising the prices in another locality where there is no competition. The language in our Act sets forth as definite a standard as the evil to be regulated will permit. For, as was said in *State* v. *Lanesboro Produce & Hatchery Co.,* 221 Minn. 246, 21 N. W. 2d 792, 163 A. L. R. 1108, the kind of activity here regulated is such that the use of general and flexible terms in fixing the standard is inescapable. That court upheld, as

against the contention here made, a statute prohibiting discrimination between "different sections, localities, communities, cities, or villages . . . by purchasing at a higher rate in one locality . . . than is paid . . . in another section, locality, community, city or village." See annotations in 52 A. L. R. 169 and 163 A. L. R. 1124.

Reversed.