**LEWIS SERVICE CENTER, INC., a Corporation, Appellee,**

v.

**MACK TRUCKS, INC., a Corporation, Appellant.**

No. 82-2158.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1983.

Decided Aug. 18, 1983.

Rehearing and Rehearing En Banc Denied Nov. 4, 1983.

Latham, Watkins & Hills, Carla A. Hills, Reed E. Hundt, Maureen E. Mahoney, Edward J. Shapiro, Washington, D.C., Cline, Williams, Wright, Johnson & Oldfather, David R. Buntain, Patricia C. Shaffer, Lincoln, Neb., for appellant, Mack Trucks, Inc.

Law Offices of Cobb & Rehm, P.C., Lincoln, Neb., for appellee, Lewis Service Center, Inc.

Before BRIGHT and McMILLIAN, Circuit Judges, and NICHOL, Senior District Judge.*

BRIGHT, Circuit Judge.

In this antitrust action, Mack Trucks, Inc. (Mack) appeals from the district court's judgment enforcing a jury verdict and award against Mack for $900,000 in treble damages plus attorneys' fees of $202,558.70 and $10,437.33 in costs. The jury found that Mack's "sales assistance program," whereby from 1977 to 1980 Mack gave its dealer, Lewis Service Center, Inc. (Lewis), a reduced wholesale price to meet retail price competition, constituted price fixing in violation of section one of the Sherman Act. Mack contends the trial court improperly instructed the jury on the standard for determining liability for price fixing under the Sherman Act, and that, even under the standard applied, the evidence is insufficient to support a finding that Mack engaged in price fixing. Because we agree that under the undisputed evidence Mack's sales assistance program does not violate the Sherman Act, we reverse.

## I. *Background.*

Lewis operates a dealership in Lincoln, Nebraska, selling trucks manufactured by Mack. As one of Mack's dealers, Lewis may participate in Mack's nation-wide "sales assistance program," under which Mack reduces its standard wholesale price to dealers on a case-by-case basis when dealers cannot meet interbrand competition from other truck dealers. To participate in

* FRED J. NICHOL, United States Senior District Judge for the District of South Dakota, sitting by designation.

the sales assistance program, a dealer submits an application to Mack setting forth the resale price the dealer estimates it can obtain from a particular customer, and identifies the interbrand competition that necessitates offering a lower resale price for a Mack brand truck.

If Mack decides to grant sales assistance, Mack agrees to reduce its wholesale price to the dealer by an amount that guarantees the dealer a specified minimum profit on the sale (generally 4 percent of the chassis list price). After the dealer reaches an agreement with its customer and orders the truck, Mack builds the truck to specifications and sells it to the dealer at the standard wholesale price.[1] Pursuant to a power of attorney, Mack executes a note on the dealer's behalf for the full price of the truck and places the note for collection with Mack Financial Corporation, Mack's wholly-owned subsidiary.

After the dealer resells the truck to its customer, the dealer reports its final sale price and costs to Mack. If the dealer obtained a profit less than the minimum guaranteed by Mack at the time Mack granted sales assistance, Mack reduces the standard wholesale price and credits the dealer's "parts" account by the amount necessary to raise the dealer's profit to the guaranteed amount. If the dealer's profit exceeded the guaranteed amount, Mack either charges the dealer its standard wholesale price, granting no sales assistance credit, or reduces the price only to the extent necessary to allow the dealer the guaranteed profit.

At trial, Lewis contended that Mack's sales assistance program constituted resale price maintenance in violation of section one of the Sherman Act. Lewis argued that by setting its standard wholesale price artificially high, Mack forced Lewis to apply for sales assistance, thus coercing Lewis to sell its trucks at a price that unduly limited Lewis' profit and denied Lewis the opportunity to negotiate its prices. In the alternative, Lewis contended that Mack and Mack Financial, as separate entities, conspired to fix the retail price of trucks sold by Lewis. The district court submitted the case to the jury on both theories of liability.

On June 18, 1982, the jury rendered a general verdict in favor of Lewis, awarding $300,000 in damages. The district court denied Mack's motions for judgment notwithstanding the verdict and a new trial, finding that "there was evidence from which a jury reasonably could find that [Lewis'] theories were factually supported." The court then trebled damages to $900,000, and awarded Lewis $202,558.70 in attorneys' fees and $10,437.33 in costs, for a total of $1,112,996.03.

On appeal, Mack argues that the district court erred in submitting the case to the jury for evaluation under a per se standard of liability rather than a "rule of reason" standard. Mack argues that the jury could not have held for Lewis under a rule of reason analysis because Lewis presented no evidence showing that Mack's program had an anticompetitive effect on the market. Moreover, Mack argues that even under the per se standard of illegality, Lewis failed to present sufficient evidence to show that Mack's sales assistance program constituted price fixing within the meaning of the Sherman Act. Mack maintains that it neither suggested any retail price to be charged by Lewis, nor used any impermissible means to force adherence to a suggested retail price.

Mack also challenges the district court's submission to the jury of Lewis' charge that Mack and Mack Financial conspired to fix the retail prices charged by Lewis. First, Mack argues that Mack and Mack Financial did not have legal capacity to conspire because Mack Financial, Mack's subsidiary, merely performed ministerial acts at the direction of Mack. Second, Mack argues that Lewis presented no evidence showing that Mack and Mack Financial actually conspired to fix prices. Finally, Mack contests the district court's calculation and award of attorneys' fees to Lewis. We conclude that the district court erred in analyzing Mack's

---

1. The truck sales in issue are those that are "custom" ordered.

sales assistance program under the per se standard of liability. Moreover, we conclude that there is no evidence in the record from which a jury properly applying the rule of reason standard could have found for Lewis. Accordingly, we reverse the district court's judgment.

## II. *Discussion.*

### A. *Standard of Liability.*

█ Section one of the Sherman Act literally prohibits "[e]very contract, combination * * * or conspiracy, in restraint of trade." 15 U.S.C. § 1 (1976). As the Supreme Court has long recognized, however, Congress could not have intended a literal interpretation of the word "every," and, consequently, courts have applied a rule of reason analysis to most types of restraints. *Arizona v. Maricopa County Medical Society,* 457 U.S. 332, 342, 102 S.Ct. 2466, 2472, 73 L.Ed.2d 48 (1982). Under a rule of reason analysis, the factfinder must scrutinize the intent and effect of the practice challenged, and determine whether the particular practice increases or impairs competition. *Chicago Board of Trade v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 243, 62 L.Ed. 683 (1918).

At the same time, however, the Court has maintained that combinations formed "for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity" in commerce is illegal per se, and that no showing of the "so-called competitive abuses or evils which those agreements were designed to eliminate or alleviate may be interposed as a defense." *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 218, 223, 60 S.Ct. 811, 841, 844, 84 L.Ed. 1129 (1940); *see Catalano, Inc. v. Target Sales, Inc.,* 446 U.S. 643, 100 S.Ct. 1925, 64 L.Ed.2d 580 (1980); *Albrecht v. Herald Co.,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968). Thus, once a price-fixing agreement is proved, courts have applied a "conclusive presumption" that the Sherman Act prohibited such an agreement. *Standard Oil Co. of New Jersey v. United States,* 221 U.S. 1, 65, 31 S.Ct. 502, 517, 55 L.Ed. 834 (1911). In addition, courts have applied the per se rule in cases where, although the price-fixing scheme involved was more subtle, or the particular restraint seemed reasonable on its face, repeated experience in analyzing such a restraint under the rule of reason showed that the plan had an anticompetitive effect on the market. *See Arizona v. Maricopa County Medical Society, supra,* 457 U.S. at 345, 102 S.Ct. at 2473, 73 L.Ed.2d 48.

Mack argues that it is inappropriate to apply the presumption of unreasonableness imposed by a per se rule to the case at hand, because Mack's program is not a "naked restraint" of trade that explicitly fixes resale prices. In addition, Mack argues that its program involves "substantial competitive virtues." Finally, Mack argues that the per se rule is more generally applied to horizontal rather than vertical arrangements, and notes that its program is implemented vertically.

█ We agree with Mack that the vertical restraints in this case should not have been evaluated under a per se standard of illegality. After examining the record, we fail to find sufficient evidence that Mack's sales assistance program constituted either an obvious price-fixing scheme, to which the per se rule automatically applies, or a more subtle vertical restraint, to which the per se rule applies when justified by repeated judicial experience.

Mack neither directly nor indirectly fixed the price at which Lewis ultimately sold its trucks. Lewis does not dispute that, under the sales assistance program, Lewis estimates the price at which it intends to sell a truck and then reports this proposed price to Mack when applying for a sales assistance discount on the wholesale price of the truck. In evaluating Lewis' request for sales assistance and price estimates, Mack does not suggest an alternative price to Lewis. Nor does Mack require Lewis to adhere to Lewis' original estimate in making the final sale. Lewis may ultimately charge a lower or higher price than that represented in its request for sales assistance. Moreover, there is no evidence that Mack has terminated a sale or threatened to

refuse a sale because of any dissatisfaction with a price estimate submitted to it by any of its dealers.

In each case cited by Lewis in support of applying a per se standard, the challenged restraints involved either explicit price fixing, where the manufacturer dictated the exact resale price, *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), termination or threats of termination, *Cernuto, Inc. v. United Cabinet Corp.,* 595 F.2d 164 (3d Cir.1979); *Lessig v. Tidewater Oil Co.,* 327 F.2d 459 (9th Cir.) *cert. denied,* 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964), or the agreements were horizontal.[2] *Arizona v. Maricopa County Medical Society, supra,* 457 U.S. at 348, 102 S.Ct. at 2475, 73 L.Ed.2d 48.

In the instant case, Mack simply determines the maximum amount, based on the information supplied to Mack by the dealer, by which Mack is willing to reduce its wholesale price (and thereby its profit) in order to assist the dealer in selling a Mack truck. In granting such a discount, Mack may require the dealer to reduce its own profit as well. Mack has a right to ensure that the discount it affords its dealers is passed on to the customer. We cannot accept Lewis' argument that Mack must lower its wholesale price to a figure Lewis deems attractive without requiring a commensurate reduction on Lewis' part.

Finally, we note that the record shows that Lewis made a substantial amount of its sales to large volume fleet customers, who purchased several trucks at once. When sales of a large volume are involved, wholesalers and dealers must often be willing to lower their profit margins in order to meet competitive offers from other companies. We fail to see how a trier of fact could find such a program to be coercive price fixing.

In support of our holding, we note that the Tenth Circuit has recently rejected the argument that a per se rule should have been applied to a vertical price discount system similar to the one involved here. In *AAA Liquors, Inc. v. Joseph E. Seagram*

*and Sons, Inc.,* 705 F.2d 1203, 1204 (10th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983), a group of small liquor retailers contended that Seagram's program, by which it gave price supports to a Denver wholesaler who in turn offered discounts to large volume Denver liquor stores in order to increase Seagram's share of the market, constituted per se illegal price fixing under section one. Noting that "all vertical arrangements affecting price do not constitute resale price maintenance agreements," the court held that Seagram's system was neither per se unlawful nor violative of the rule of reason. *Id.* at 1205, 1207–08. The court found that even though Seagram guaranteed a gross profit margin to its wholesaler, as well as conditioning its discounts on the requirement that they be passed on to the customer, Seagram did not "fix" the retail prices. Seagram neither "coerced [the retailers] into offering a particular price [nor] punished [them] if they did not." *Id.* at 1207. The court also stated:

> A supplier who grants discounts to a retailer to permit the retailer to charge competitive prices has a legitimate interest in making sure the retailer receiving the discount "is not pocketing the price support instead of passing it on to its customers." [*Id.* at 1206 (citations omitted)].

This reasoning is persuasive and we apply these principles here. We hold that Mack's sales assistance program does not constitute price fixing and, consequently, should not have triggered application of a per se standard of liability.

As stated above, courts have also applied a per se rule in cases where, although the scheme involved was perhaps more subtle or sophisticated, repeated experience in analyzing such a restraint under the rule of reason enabled a court "to predict with confidence that the rule of reason [would] condemn it." *Arizona v. Maricopa County Medical Society, supra,* 457 U.S. at 344, 102 S.Ct. at 2473, 73 L.Ed.2d 48. In the case at hand, we are unable to con-

---

2. In *Maricopa, supra,* the Supreme Court stated that horizontal restraints are "generally less defensible than vertical restraints." 457 U.S. at 348, 102 S.Ct. at 2475 n. 18, 73 L.Ed.2d 48.

clude that the rule of reason would condemn Mack's sales assistance program. Nor do we find sufficient judicial "experience" with this type of restraint to support condemning it. Lewis cites no case in which a program such as Mack's has been found illegal. On the other hand, we note instances where reviewing courts have upheld the legality of plans similar to Mack's. *See AAA Liquors, Inc. v. Joseph E. Seagram and Sons, Inc., supra,* 705 F.2d at 1208; *Butera v. Sun Oil Co.,* 496 F.2d 434 (1st Cir.1974) (gasoline supplier's discount system whereby supplier charged wholesale price on delivery to retailer and later credited retailer for discount amount was not resale price maintenance where retailers were free to set their own price for gasoline); *Sun Oil Co. v. Vickers Refining Co.,* 414 F.2d 383 (8th Cir.1969) (allowing a contract formula between two gasoline suppliers in which first supplier sold to second supplier and guaranteed a minimum profit to second supplier based on the price actually received by second supplier from its "jobbers").

The Supreme Court has cautioned against applying a per se standard to vertical price restraints unless they are shown to have a "pernicious effect on competition," or that they lack "any redeeming virtue." *Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 58, 97 S.Ct. 2549, 2561, 53 L.Ed.2d 568 (1977), *citing Northern Pac. R. Co. v. United States,* 356 U.S. 1, 5, 38 S.Ct. 514, 2 L.Ed.2d 545 (1958). Per se rules of illegality are appropriate only when they relate to conduct that is "manifestly anticompetitive." *Id.* 433 U.S. at 50, 97 S.Ct. at 2557. The record shows no basis for finding that Mack's sales assistance program constitutes price-fixing or that this program creates a "pernicious effect on competition." Thus, we determine that the district court abused its discretion in applying a per se rather than a rule of reason standard.

### B. *Rule of Reason.*

Had the district court submitted Mack's program under a rule of reason standard, the factfinder would have been required to decide whether, under all the circumstances of the case, the restrictive practice imposed an unreasonable restraint on competition. *Arizona v. Maricopa County Medical Society, supra,* 457 U.S. at 343, 102 S.Ct. at 2472, 73 L.Ed.2d 48. Factors to be considered would have included the nature and effect of the restraint, the "evil" believed to exist, the purpose or end sought to be obtained, and the intent of the party imposing the restraint. *Chicago Board of Trade v. United States, supra,* 246 U.S. at 238, 38 S.Ct. at 243.

In *AAA Liquors, supra,* the Tenth Circuit applied a rule of reason analysis in evaluating Seagram's price support system and concluded that Seagram's alleged restraints were not anticompetitive. The court found no evidence of intent by Seagram to "cripple" small retailers as competitors, but found rather that the purpose of the discount program was to increase Seagram's sales as against the major competing brands. *Id.* at 1207–08. The *AAA* court concluded by finding that the effect of the discount program, in fact, was to lower retail prices to consumers and increase interbrand competition, noting:

> The ultimate test of legality, under the rule-of-reason analysis is whether the particular restraint increases or impairs competition. [*Id.* at 1208].

Employing the same test in the instant case, we observe that the evidence points without contradiction to the conclusion that the purpose of Mack's discount program is not to force adherence to any particular price scheme of Mack's, but to promote sales of Mack trucks, particularly where the potential sale is one of a large volume. The record contains no evidence of an intent on the part of Mack to "cripple" its dealers. Further, the record establishes that during the period complained of, 1978–1980, the majority of trucks sold by the ten dealers in Lewis' region were made without sales assistance. Presumably, if Mack were coercing its dealers to apply for sales assistance, the record would reflect that dealers could rarely make sales without Mack's assistance. The record does not so reflect. Indeed, Lewis is the only one of Mack's ten

regional dealers who sold more than half of its trucks under the sales assistance program. As already noted above, a large percentage of Lewis' particular market involves sales to large-volume fleet buyers.[3] Although Lewis may be unhappy with the wholesale prices charged by Mack, it does not necessarily follow that Lewis is entitled to a remedy under the antitrust laws.

■ After examining the entire record, we fail to see how Mack's program can be characterized as anything other than pro-competitive. If Lewis' representations in its requests for sales assistance are true, Lewis presumably would not be able to offer a competitive price without sales assistance. The ultimate customer would therefore probably pay a higher price, and Lewis would make no sale or profit at all. Thus, the effect of the discount program, as in *AAA Liquors*, is to lower retail prices to customers and increase interbrand competition. Lewis offers no evidence to the contrary. Consequently, we conclude, as a matter of law, that Mack's discount program has not been shown to be manifestly anticompetitive and, under a rule of reason standard, does not violate section one of the Sherman Act.

III. *Conclusion.*

The district court erred in applying a per se rule rather than a rule of reason in evaluating Mack's sales assistance program. We find it unnecessary to remand for a new trial, however, because we hold that Mack's program does not violate the Sherman Act when evaluated under a rule of reason. Because we determine that Mack did not violate section one under the first of Lewis' theories of liability, we need not address Lewis' conspiracy theory. Nor do we need to examine Mack's claim that Lewis failed to establish any injury caused by Mack's alleged price restraints. In sum, we hold that Mack Trucks was entitled to judgment in its favor as a matter of law. The district court's judgment, as well as its award of attorneys' fees, is therefore reversed, and this matter is remanded to the district court with directions to dismiss Lewis' claim under section one of the Sherman Act.

---

3. For the period in question, approximately 125 of the 277 sales made by Lewis under the program were to the same purchaser.