738 P.2d 927

**JAY WALTON ENTERPRISES, INC., a New Mexico Corporation, Plaintiff-Appellant,**

v.

**RIO GRANDE OIL COMPANY OF BERNALILLO COUNTY, a New Mexico Corporation; Walter Steele, individually; and Mike Steele, individually, Defendants-Appellees.**

No. 8905.

Court of Appeals of New Mexico.

May 14, 1987.

Certiorari Denied June 17, 1987.

56

J. Stephen Gammill, David W. Frizzell, Albuquerque, for plaintiff-appellant.

Charles J. Noya, Villella, Skarsgard & Noya, P.A., Albuquerque, for defendants-appellees.

## OPINION

DONNELLY, Chief Judge.

Plaintiff appeals from a district court judgment denying its action for unlawful price discrimination against defendants Rio Grande Oil Company of Bernalillo County, Walter Steele, and Mike Steele. Five issues are presented on appeal: (1) whether the trial court erred in determining that the rebate plan of defendants was functionally available to plaintiff; (2) whether the rebate plan amounted to price discrimination; (3) whether other Gulf dealers were competitors of plaintiff; (4) whether the defense of "good faith" applied; and (5) whether there was sufficient proof of damages. Under our analysis, the arguments in issues (1) and (2) merge and we discuss them jointly. We affirm.

## I. THE REBATE PLAN

Plaintiff corporation leased several service station facilities from defendants in Albuquerque and operated a business servicing automobiles and selling Gulf Oil Company products. Commencing in 1979, defendants informed each of its dealers, including plaintiff, that because of intense competition in gasoline prices in the Albuquerque area, it would rebate profits on the gross tank wagon price of gasoline if the dealers would reduce their retail prices

of gasoline to at or below the retail price determined by defendants.

Defendants rebated up to two cents per gallon to each dealer participating in the plan, thus guaranteeing the dealer a two cents per gallon gross profit. Participating dealers were also released from their portion of rent obligations to defendants. A dealer, however, could not receive the rebate without lowering its price at least to the price dictated by defendants. The decision of whether to participate in the rebate plan was optional with each dealer.

Plaintiff rejected the plan, contending it was economically injurious. Instead, Jay Walton, plaintiff's president, suggested that defendants sell the gasoline to plaintiff at the price the participating dealers were selling it to the public, i.e., their retail price. Defendants declined to adopt Walton's suggestion and in 1982, after plaintiff began losing money, defendants cancelled the lease agreements with plaintiff which were based upon the gross monthly sales of gasoline.

Thereafter, plaintiff filed suit against defendants, alleging that defendants' actions constituted a violation of the New Mexico Price Discrimination Act, NMSA 1978, Sections 57–14–1 to –9, and had forced plaintiff out of business. Plaintiff contended that, because it had rejected defendants' plan, it was required to sell gasoline at prices higher than its competitors' prices and that it was thereby forced out of business.

The trial court found that the rebate plan offered by defendants was available to all of defendants' dealers, but participation in the rebate plan was not required. The court also found that:

17. [Plaintiff] did not want to discount the sale of gasoline to the public and therefore rejected the plan.

18. The other retailer dealers of [Defendant] Oil Company did not market petroleum products in the same trade areas represented by the two stations of [Plaintiff].

19. [Defendant] Oil Company was not an owner or operator of service stations that were in competition with [Plaintiff].

\* \* \* \* \* \*

21. Defendants did not dictate the price that the plaintiff was to charge to the public, nor did the Defendants dictate the price that was to be charged by other service stations owned and operated by other dealers.

\* \* \* \* \* \*

23. Dealers were free to mark the gasoline prices lower than the price set for rebate.

On appeal, plaintiff asserts that because it was not economically feasible for it to accept defendants' offer to participate in the rebate plan, the plan was not "functionally available." Hence, the rebate plan as applied to it constituted price discrimination. (Plaintiff contends that even if its sales volume doubled as a result of the reduced prices, the income would have been insufficient to operate its two stations.)

### A. New Mexico Price Discrimination Act

Did the rebate plan offered by defendants violate the New Mexico Price Discrimination Act? We hold that under the facts applicable herein, there was no violation of the Act.

Section 57–14–3 of the Act provides in part:

A. It is unlawful for any person engaged in commerce, either directly or indirectly, intentionally, for the purpose of destroying competition or eliminating a competitor, to:

(1) discriminate in price between different purchasers or commodities of like grade and quality; or

(2) discriminate in price between different sections, communities or cities in this state where the effect is to lessen competition substantially, to create a monopoly in any line of commerce or to injure, destroy or prevent competition with any person who grants or knowingly receives the benefit of the discrimination, or with customers of either.

The Price Discrimination Act adopted by the New Mexico Legislature, except for its provision permitting damages, closely par-

allels the Robinson-Patman Act, adopted by Congress as an amendment to the Clayton Anti-Trust Act, 15 U.S.C. Section 13 (1976). The basic purpose behind federal and state antitrust legislation is to promote the public interest in a competitive economy, *United Nuclear Corp. v. General Atomic Co.*, 93 N.M. 105, 597 P.2d 290, *cert. denied*, 444 U.S. 911, 100 S.Ct. 222, 62 L.Ed.2d 145 (1979), by preventing monopolistic practices and conduct restraining trade. *NAACP v. New York Clearing House Ass'n*, 431 F.Supp. 405 (S.D.N.Y.1977). Price discrimination statutes are designed to prevent a business from destroying competition through unfair pricing practices, such as, for example, depressing prices in one locality where there is competition and offsetting the loss by raising prices in another area where there is little or no competition. *Concrete, Inc. v. Arkhola Sand & Gravel Co.*, 230 Ark. 315, 322 S.W.2d 452 (1959). The primary purpose of enacting the Robinson-Patman Act was to prohibit quantity discounts where there was no cost saving attributable to the quantity sales. *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir.1983).

Woven into the fabric of the Price Discrimination Act is the proscription that an individual or entity shall not intentionally engage in practices designed to hinder free competition between parties, or to discriminate between customers on terms not accorded to all purchasers on substantially equal terms. §§ 57–143(A)(2); 57–14–6.

Section 57–14–4 establishes a defense to an action brought under the Act if it is shown "that the seller's lower price, payment or furnishing of services or facilities to any purchaser, was made in good faith to meet equally low prices of a competitor."

Because of the similarities between the Price Discrimination Act and the Robinson-Patman Act, we look to the federal law for assistance in interpretation and application of the state act. Rebates allowed upon the purchase of goods are permissible under the Robinson-Patman Act when there is no discrimination between buyers of the same classification and the rebates do not stifle competition or create a monopoly. *See* An-notation, *Discounts permissible under Robinson-Patman Amendment to Clayton Act*, 1 A.L.R.2d 276 (1948). In the course of determining whether resale price maintenance violations have occurred under the Sherman Act, 15 U.S.C. Sections 1 to 7 (1976), courts in other jurisdictions have generally acknowledged the validity of rebate plans which enabled the supplier to tailor its wholesale price according to the competitive situation within the market. *See Lewis Serv. Center, Inc. v. Mack Trucks, Inc.*, 714 F.2d 842 (8th Cir.1983); *Butera v. Sun Oil Co.*, 496 F.2d 434 (1st Cir.1974); *Sun Oil Co. v. Federal Trade Comm'n*, 294 F.2d 465 (5th Cir.1961), *rev'd on other grounds*, 371 U.S. 505, 83 S.Ct. 358, 9 L.Ed.2d 466 (1963); *Swettlen v. Wagoner Gas & Oil, Inc.*, 373 F.Supp. 1022 (W.D.Pa.1974); *cf. AAA Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 705 F.2d 1203 (10th Cir.1982), *cert. denied*, 461 U.S. 919, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983).

**B. Availability**

The notion that a rebate plan must be "functionally available", as urged by plaintiff, is not expressly recognized in either Section 57–14–3 of our Act, or in the federal counterpart, Section 2(a) of the Robinson-Patman Act. *See generally* Millstein, *The Status of "Availability" Under Section 2(a) of the Robinson-Patman Act*, 42 N.Y.U.L.Rev. 416 (1967).

Courts generally will not find unlawful price discrimination where the seller offers the same price concessions and allowances to all customers. *See Klamath-Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau*, 701 F.2d 1276 (9th Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983); *Bouldis v. United States Suzuki Motor Corp.; Borden Co. v. Federal Trade Comm'n*, 381 F.2d 175 (5th Cir.1967). Moreover, in discussing price variances received by a gasoline supplier from purchasers according to their acceptance or rejection of competitive allowances, one court noted: "If a seller *offers* the same price to all customers, there is *no* actionable price discrimination *despite* the fact that a buyer fails to take advantage of any allowance that has been practically

available to him." *Mowery v. Standard Oil Co.*, 463 F.Supp. 762, n. 17 at 776 (N.D. Ohio 1976) (emphasis in original); *see also Bouldis v. United States Suzuki Motor Corp.*

Although we recognize that circumstances may exist in which a rebate plan or discount allowance may not be functionally available, the facts herein do not give rise to a basis for such finding. *See Klamath-Lake Pharmaceutical Ass'n; Bouldis v. United States Suzuki Motor Corp.; Borden Co. v. Federal Trade Comm'n; cf. Federal Trade Comm'n v. Morton Salt Co.*, 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed.2d 1196 (1948) (recognizing that, in passing the Robinson-Patman Act, Congress was especially concerned with protecting the small buyer from the large buyer's competitive advantage derived from quantity purchasing power, the Court held that because of the volume requirement, manufacturer's quantity discounts were not functionally available, although theoretically available to all); *Mueller Co. v. Federal Trade Comm'n*, 323 F.2d 44 (7th Cir.1963) (manufacturer's discounts were not functionally available to plaintiff-jobbers because there were no objective standards to guide plaintiffs in qualifying for the category of purchasers receiving the discounts); *Century Hardware Corp. v. Acme United Corp.*, 467 F.Supp. 350 (E.D.Wis.1979); *see generally* 16C J. von Kalinowski, *Business Organizations* § 27.04 (1986).

### C. Price Discrimination

Plaintiff asserts that because it could not profitably participate in the plan, the effect of the plan was to create a price differential between dealers which amounted to price discrimination in violation of the Price Discrimination Act. We disagree.

The Price Discrimination Act enacted by New Mexico, similar to the Robinson-Patman Act adopted by Congress, requires equality of treatment among purchasers, but it does not mandate that a seller adhere to a single uniform price under all circumstances. *See FLM Collision Parts, Inc. v. Ford Motor Co.*, 543 F.2d 1019 (2d Cir. 1976), *cert. denied*, 429 U.S. 1097, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977).

It is not a violation of the Price Discrimination Act for a distributor to establish price differentials for the product sold based on factors which are not designed or intended to eliminate competition or to create a monopoly, but which instead are based upon other valid criteria, such as cost differentials due to geographic proximity. *See Ingram v. Phillips Petroleum Co.*, 252 F.Supp. 674 (D.N.M.1966); *see also Chapman v. Rudd Paint & Varnish Co.*, 409 F.2d 635 (9th Cir.1969).

Plaintiff contends it elected not to participate in the rebate plan offered by defendants because it could not do so profitably. Participation in the plan was voluntary and plaintiff's election not to participate and sell gasoline at a lower retail price when other dealers were lowering prices to meet competition did not establish price discrimination on the part of defendants. Plaintiff has not shown the requisite causal connection between the plan and the claimed injury suffered by it. *See Perkins v. Standard Oil Co.*, 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969); *Tri-Valley Packaging Ass'n v. Federal Trade Comm'n*, 329 F.2d 694 (9th Cir.1964); *Shreve Equip., Inc. v. Clay Equip. Corp.*, 650 F.2d 101 (6th Cir.1981); *see generally* 16D J. von Kalinowski, *Business Organizations* §§ 31.01 [4] [i]; 31.01 [5] [b] (1987).

The trial court's finding that the rebate plan and actions of the defendants were not unlawful is supported by substantial evidence and is not contrary to law.

### II. ISSUE OF COMPETITION

The trial court found that other Gulf stations in Albuquerque were not competitors of plaintiff. Plaintiff contends that the trial court erred in adopting this finding because the testimony of the witnesses supported a contrary finding.

Jay Walton, the president of plaintiff corporation, testified that all the other dealers of Gulf gasoline products purchased their gasoline from defendant Rio Grande Oil Company and that they were his competitors.

**60**

Defendants, however, presented testimony to the contrary. David Gonzales, an expert witness, testified that plaintiff's stations are located in different "trade areas" of the Albuquerque market. Gonzales also stated that plaintiff had no other Gulf competitors in his "trade area."

 Whether a rebate plan was fashioned with an intention of injuring or destroying competition, and whether defendants' actions tended to curtail or destroy competition is a question of fact for the fact finder. *Cf. Ivan's Tire Serv. Store, Inc. v. Goodyear Tire & Rubber Co.*, 10 Wash.App. 110, 517 P.2d .229 (1973).

The finding of the trial court that other Gulf dealers in Albuquerque were not competitors of plaintiff is supported by substantial evidence. The trial court was not bound to accept the testimony of Walton concerning whether other Gulf dealers were competitors of plaintiff. Where evidence is conflicting and the court adopts findings on a disputed issue, the fact that there may have been other evidence upon which the court could have adopted a different finding does not constitute error. *Roybal v. Morris*, 100 N.M. 305, 669 P.2d 1100 (Ct.App.1983).

## III. DEFENSE OF "GOOD FAITH"

It is a defense to an action alleging price discrimination under the New Mexico Act to show that defendants acted in "good faith" and did not intend their actions to create a monopoly or to unlawfully discriminate against a competitor. *See* §§ 57–14–3(A); 57–14–4.

Plaintiff argues that the defense of good faith applies to the competitors of defendant Rio Grande Oil Company, and not its dealers, including the plaintiff. Since we have determined under Point I above, that, under the facts herein, the rebate plan offered by defendants did not violate the Price Discrimination Act and that other Gulf dealers were not competitors of plaintiff, this contention is not a viable issue.

## IV. DAMAGES

Finally, plaintiff claims that the trial court erred in its determination that plaintiff failed to establish damages as a result of the rebate plan initiated by defendants. Contrary to plaintiff's contentions, the record indicates that the price of gasoline in the trade area was sensitive to both national and regional market competition. We have concluded under Point I above, that plaintiff has not shown the requisite causal connection between the plan and the claimed injury. For these reasons, the trial court's finding that the rebate plan of defendants did not unlawfully discriminate against plaintiff and did not result in damages to the plaintiff is supported by substantial evidence.

We have examined each of plaintiff's arguments and find them without merit as they apply to the facts herein.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

MINZNER and FRUMAN, JJ., concur.