773 P.2d 1241 (1989)
108 N.M. 434
In the Matter of William (Willie) SANDERS.
William (Willie) SANDERS, Petitioner-Appellant and Cross-Appellee,
v.
NEW MEXICO HEALTH AND ENVIRONMENT DEPARTMENT, Respondent-appellee and Cross-Appellant.
No. 10644.
Court of Appeals of New Mexico.
April 6, 1989.
*1242 Anita Carlson, Montezuma, for petitioner-appellant and cross-appellee.
Ripley B. Harwood, Beth Schaefer, Asst. General Counsels, Sp. Asst. Attys. Gen., Health & Environment Dep't., Santa Fe, for respondent-appellee and cross-appellant.

OPINION
DONNELLY, Judge.
The previous opinion is withdrawn and the following is substituted.
Petitioner appeals from a judgment denying revocation of his treatment guardianship and the Health and Environment Department (HED) cross-appeals from the judgment ordering it to pay for petitioner's expert witness fee. Three issues are raised in petitioner's appeal: (1) claim of lack of substantial evidence to support the trial court's findings that petitioner was incapable of making rational decisions regarding his own treatment; (2) whether the trial court erred in determining the standard of proof; and (3) claim of denial of equal protection.
In its cross-appeal HED argues: (1) the trial court did not have statutory authority to appoint an independent mental health professional; (2) the trial court erred in ordering HED to pay the cost of petitioner's expert witness fee; and (3) the district court or Administrative Office of the Courts is required to pay the cost of an independent expert witness appointed by the district court, and not HED. We affirm in part and reverse in part.

FACTS
Petitioner was admitted to the Forensic Treatment Unit at the Las Vegas Medical Center May 19, 1987, after having been found incompetent to stand trial. In July 1987, acting pursuant to the Mental Health and Developmental Disabilities Code, NMSA 1978, Sections 43-1-1 to -25 (Repl. Pamp. 1984), HED petitioned for the appointment of a treatment guardian. § 43-1-15. Following a hearing, an order appointing the guardian was entered on August 4, 1987. Thereafter, in November 1987, petitioner moved to terminate the treatment guardianship, alleging that he had regained competence to make his own treatment decisions. Petitioner also requested an evaluation by an independent mental health professional. The court granted this request, appointed a clinical psychologist and ordered the cost to be assessed to HED.
A hearing was held in January 1988 on petitioner's motion to terminate the treatment guardianship. In March of 1988, the trial court entered findings of fact and conclusions of law. The court found, among other things, that petitioner was suffering from schizophrenia; he was resistant to taking prescribed medication; he evidenced some improvement but this is due to the prescribed medication; he will cease taking appropriate medication if not required to do so; and as a result of his mental illness he is not capable of informed consent or making his own treatment decisions. The court also concluded, in part, that petitioner was in need of an expert mental health professional to testify on his behalf.
The trial court entered its final judgment denying petitioner's request to terminate the treatment guardianship and directed HED to pay the cost of the independent expert witness appointed on behalf of petitioner.

I. PETITIONER'S APPEAL

(A) Sufficiency of the Evidence

Petitioner contends that the court erred in adopting its findings of fact and conclusions of law determining that petitioner was not capable of informed consent or of making his own treatment decisions. Petitioner also asserts that the court's findings and conclusions determining that he was mentally ill, that he was incapable of making his own treatment decisions, and that the treatment guardianship should be continued were not supported by substantial evidence.
*1243 HED submits that since petitioner's guardianship automatically terminated pursuant to Section 43-1-15(C), one year after entry of the order appointing the treatment guardian on August 4, 1988, and because during the pendency of this appeal petitioner was discharged from the medical center, the issues asserted by petitioner on appeal are moot.
Inasmuch as all but one of the claims raised by petitioner are capable of repetition, involve questions of public importance and appeals of this nature may otherwise evade meaningful appellate review, we determine that the present case presents circumstances bringing it within an exception to the mootness rule. See In re Bunnell, 100 N.M. 242, 668 P.2d 1119 (Ct.App. 1983); see also In re Pernell, 92 N.M. 490, 590 P.2d 638 (Ct.App. 1979). The one issue raised by petitioner that does not meet these criteria is the question of the sufficiency of the evidence in his case.
In view of the fact that petitioner's challenge to the sufficiency of the evidence is interwoven with his other claims on appeal we have determined that the record properly supports the trial court's decision denying termination of the treatment guardianship. The fact that there may have been other evidence upon which it could have reached a different result does not constitute error. Jay Walton Enters., Inc. v. Rio Grande Oil Co., 106 N.M. 55, 738 P.2d 927 (Ct.App. 1987).

(B) Standard of Proof

Petitioner asserts that the trial court's decision refusing to terminate the treatment guardianship was erroneous as a matter of law because the trial court did not apply the proper standard of proof. He argues that, although the statute does not clearly delineate the burden of proof, the proper elements of proof in such case are whether the patient is capable of understanding the proposed nature of treatment and its consequences and is capable of expressing a decision regarding its acceptance or refusal.
In New Mexico, a client who is involuntarily committed to a mental health institution maintains a right to consent or refuse psychosurgery, convulsive therapy, experimental treatment or behaviorial modification programs involving aversive stimuli or substantial deprivations, unless the client is determined to be incapable of making informed treatment decisions. § 43-1-15. Cf., e.g., Dautremont v. Broadlawns Hosp., 827 F.2d 291 (8th Cir.1987) (administration of psychotherapeutic drugs against will of patient does not violate due process where proper procedure was followed and patient was clearly and convincingly found to be mentally ill).
Section 43-1-15 provides for informed consent by any client capable of understanding the proposed nature of treatment and its consequences and capable of expressing a decision regarding its acceptance or refusal. It also provides for the appointment of a treatment guardian to make a substitute decision for the client when the client is incapable of informed consent. § 43-1-15(B). The treatment guardian's decision is to be made based on the client's best interests and a least drastic means test. Id. The guardian is to consult with the client, the physician or mental health professional treating the client, the client's attorney and interested friends or relatives as the guardian deems appropriate. Id.
The statute directs that a treatment guardian may be appointed "if the court finds that the [client] is not capable of making his own treatment decisions." § 43-1-15(B). At a hearing to determine whether a treatment guardian should be appointed a client shall be represented by counsel and shall have the right to be present and present witnesses and cross-examine witnesses. Id.
Although New Mexico's statute clearly states a client's right to informed consent, it does not specify the required standard of proof necessary to establish a patient's capacity to exercise informed consent regarding treatment decisions. § 43-1-15(B). *1244 Petitioner urges that the applicable standard of proof should be proof by clear and convincing evidence. HED contends that the standard should be preponderance of the evidence. In Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), the United States Supreme Court discussed the function of the standard of proof required to uphold an involuntary commitment to a Texas mental hospital. It stated the standard of proof exists "to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." Id. at 423, 99 S.Ct. at 1808. The Court discussed the three basic standards of proof  beyond a reasonable doubt; clear and convincing evidence; and preponderance of the evidence  and concluded that the intermediate standard of clear and convincing evidence should apply to involuntary mental health commitments.
Addington recognized that civil commitment is a significant deprivation of liberty and determined that the preponderance of the evidence standard created an increased risk of erroneously committing individuals. However, the Court declined to hold that the standard of beyond a reasonable doubt was constitutionally mandated because, unlike criminal cases, civil commitments are not intended to be punitive; erroneous commitments are more likely to be corrected because of "the layers of professional review and observation" and the uncertainty of psychiatric diagnosis compared to the generally straightforward factual issues in criminal cases would render it nearly impossible to meet the standard of beyond a reasonable doubt in civil commitments. Id. at 428-29, 99 S.Ct. at 1811.
In United States v. Charters, 863 F.2d 302 (4th Cir.1988), the court held that safeguards are required where "mind-altering" medication or techniques are sought to be imposed against an individual's consent. The court adopted the rule that a mental patient is entitled to the exercise of "professional judgment" by those who have the responsibility for making medical decisions that affect his restrained liberty interests. Such decision is required to be based upon accepted medical practices concerning diagnosis. Id.
In involuntary mental health commitment proceedings in New Mexico the burden is imposed upon the state to prove the need for commitment by clear and convincing evidence. NMSA 1978, §§ 43-1-13(E), -16.1(G) (Repl.Pamp. 1984). See also In re Valdez, 88 N.M. 338, 540 P.2d 818 (1975). Other courts have recognized that forcible medication of a patient with antipsychotic drugs runs counter to the right of an individual to be free from bodily invasion, freedom of thought and the right to privacy. See e.g., United States v. Charters; Bee v. Greaves, 744 F.2d 1387 (9th Cir.1984); see also Mills v. Rogers, 457 U.S. 291, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982). Based upon the rationale of these cases, we conclude that making one's own treatment decisions involves rights analogous to those implicated in involuntary commitment proceedings and we determine that under Section 43-1-15 the burden of proof in cases seeking to appoint a treatment guardian is on the party seeking to have the guardianship approved, and the moving party must establish such need by clear and convincing evidence. Cf. Addington v. Texas (the standard of proof in state involuntary commitment proceedings required by fourteenth amendment is clear and convincing evidence).
After a treatment guardianship has been determined to be necessary what standard of proof is applicable in proceedings seeking to terminate such guardianships? Upon which party does the burden rest? Petitioner recognizes that the party requesting relief generally has the initial burden of presenting evidence. Wallace v. Wanek, 81 N.M. 478, 468 P.2d 879 (Ct.App. 1970). Proceedings to terminate treatment guardianships differ from proceedings seeking the initial appointment as a guardian because the state has already proven the patient's incapacity to make informed *1245 treatment decisions, thus giving rise to a presumption that the patient's prior condition continues to exist.
When there is a presumption against a party, that party has the burden of going forward with evidence to rebut or to meet that presumption, but the burden of proof continues to rest on the party upon which it originally rested. See SCRA 1986, 11-301. Under Section 43-1-15(C) of the Mental Health and Developmental Disabilities Code, when the court appoints a treatment guardian it must specify the length of time for the guardianship period up to a period not to exceed one year. The statute further provides:
If at the end of his guardianship period, the treatment guardian believes that the client is still incapable of making his own treatment decisions, he shall petition the court for reappointment or for appointment of a new treatment guardian. The guardianship shall be extended or a new guardian * * * appointed only if the court finds the client is, at the time of the hearing, incapable of understanding and expressing an opinion regarding treatment decisions. [Emphasis added.]
Similarly, Section 43-1-15(D) provides that during the period of the treatment guardianship, the client, treatment provider, a relative or the client's attorney may petition the court to terminate the treatment guardianship and if "the court finds the client is capable of making his own treatment decisions, it shall terminate the power of the treatment guardian and restore to the client the power to make his own treatment decisions." A party seeking to terminate a treatment guardianship prior to the time specified in the order appointing the guardian has the burden of coming forward with some evidence proving the client's capacity to make treatment decisions. See id.; Wallace v. Wanek; see also In re Estate of Head, 94 N.M. 656, 615 P.2d 271 (Ct.App. 1980) (an adjudication of incompetency is at most presumptive evidence of the mental capacity of the person; the strength of the presumption is lessened in proportion to the remoteness of the adjudication).
We interpret Section 43-1-15(D) as requiring that the petitioner make a prima facie showing that he is capable of making informed treatment decisions in any action initiated by him seeking to terminate the appointment of a treatment guardianship during the period of the existing guardianship. To establish a prima facie case petitioner is required to establish that he is capable of understanding the proposed treatment and its consequences and capable of expressing a decision thereon. Cf. Riese v. St. Mary's Hosp. & Medical Center, 196 Cal. App.3d 1388, 243 Cal. Rptr. 241 (1987) (factors for determination of competency to make treatment decisions are: (1) the awareness of situation; (2) ability to understand benefits, risks, and alternatives to proposed medication; and (3) ability to understand and knowingly and intelligently evaluate the information and otherwise participate in rational thought processes). After the petitioner has presented a prima facie case, the state has the burden to come forward with sufficient evidence to rebut petitioner's prima facie showing by clear and convincing evidence. See R. 11-301. The latter rule provides in applicable part that "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion * * * *" Unless petitioner establishes a prima facie case, the state need not come forward with evidence of a patient's incapacity. Id.
Based on Dr. Trost's testimony, petitioner established a prima facie case that he was capable of understanding the proposed treatment and its consequences and capable of expressing a knowing and intelligent decision. Therefore, the state had the burden of proving incapacity by clear and convincing evidence. After a careful review of the record, we determine that the trial court's denial of petitioner's motion is supported *1246 by proper evidence sufficient to comply with the required standard of proof. See Duke City Lumber Co. v. Terrel, 88 N.M. 299, 540 P.2d 229 (1975); In re Valdez.

(C) Claim of Denial of Equal Protection

Petitioner also argues on appeal that the trial court erred in denial of his petition to terminate the treatment guardianship because in reaching its decision it relied on Sanders' status as a criminal defendant. We disagree. Although we find no statutory or decisional basis permitting a trial court to consider whether a party has been charged or convicted of a criminal offense as a factor in determining whether or not to administer psychiatric treatment or to terminate a treatment guardianship, the findings of fact and conclusions of law adopted by the court indicate that this was not a basis for its decision. Cf. Bee v. Greaves (decision to administer antipsychotic drugs should be based on legitimate treatment needs of the patient in accordance with accepted medical practice). Moreover, in cases tried to the court, it is presumed that the court in reaching its decision disregarded inadmissible evidence, unless it is evident that the evidence was an integral basis for the court's decision. See Davis v. Davis, 83 N.M. 787, 498 P.2d 674 (1972). Here, we find no improper basis for the court's ruling.

II. HED'S CROSS-APPEAL
We discuss jointly each of the issues raised in the cross-appeal of HED. HED argues that the Mental Health and Developmental Disabilities Code does not provide for appointment of an independent mental health professional in proceedings to determine whether or not a treatment guardian should be designated for a patient, and that the trial court lacked authority to charge against HED the cost of petitioner's expert witness. We agree that the statute does not expressly provide for judicial appointment of an expert to assist petitioner. Nevertheless, the constitutional right of due process may require appointment for an indigent in certain circumstances, see Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and a court may appoint an independent expert pursuant to SCRA 1986, 11-706(A). HED's reply brief even suggests that there may be inherent power of the trial court to appoint an expert to assist petitioner. We need not decide which of these non-statutory sources provided the authority for the trial court to appoint the expert in this case; nor need we consider what the guidelines should be for exercise of that authority. HED did not object to petitioner's motion to appoint an expert and the only relief from the order sought by HED in its motion for reconsideration before the trial court and its amended motion for reconsideration was that it not be compelled to pay the cost of the expert. Thus, the sole issue before us on appeal is who should pay for an expert appointed pursuant to authority outside of the Mental Health and Developmental Disabilities Code.
Under SCRA 1986, 11-706(A), a trial judge is expressly authorized to appoint an expert witness where he or she determines that it is necessary to aid the court in discharging its official duty. Rule 11-706(B) provides for the manner of payment indicating that the court shall determine the amount of reasonable compensation for such expert's services, and that:
The compensation thus fixed is payable from funds which may be provided by law in criminal cases and civil actions and proceedings involving just compensation under the fifth amendment to the United States Constitution and Article II, Section 2 of the New Mexico Constitution. In other civil actions and proceedings the compensation shall be paid by the parties in such proportion and at such time as the judge directs, and thereafter charged in like manner as other costs.
The above rule authorizes the trial court to appoint an independent expert unaligned with either party to assist the court in *1247 determining significant issues in the proceeding. In the instant case, although the court did not follow the procedures provided in Rule 11-706 in appointing Dr. Trost to assist petitioner, HED never complained about the procedure employed in making the appointment. In any event, Rule 11-706 is instructive since it recognizes the authority of the court to appoint expert witnesses and provides guidance for the manner of payment.
Our supreme court has also issued an order adopting guidelines for the payment of witness fees. Supreme Court Misc. Order No. 8000, filed November 17, 1987. As specified therein the court defined the responsibility for the payment of expert witness fees, and directed that expert witnesses called by a state agency pursuant to Mental Health and Developmental Disabilities Code shall be paid by the state agency, and experts called by court-appointed attorneys shall be paid by the district court. Id.
Thus, we conclude that the trial court's order directing HED to pay the costs of petitioner's mental health professional was in error. As provided in Supreme Court Misc. Order 8000, payment for petitioner's expert is payable from the funds of the district court, not the HED.

CONCLUSION
The decision of the trial court denying petitioner's motion to terminate the treatment guardianship and appointing an expert on behalf of petitioner is affirmed; we reverse that portion of the trial court's judgment ordering HED to pay the expert witness fee for Dr. Trost. On remand the trial court is directed to enter an amended order consistent with this opinion. Oral argument is unnecessary. Garcia v. Genuine Parts Co., 90 N.M. 124, 560 P.2d 545 (Ct.App. 1977).
IT IS SO ORDERED.
CHAVEZ, J., concurs.
HARTZ, J., specially concurs.
HARTZ, Judge (specially concurring).
I join the opinion of the court, including the discussion of mootness, with one exception. Because I believe that the issue concerning the sufficiency of the evidence is moot, I have not reviewed the facts to determine if there was sufficient evidence upon which to base a decision in favor of respondent by clear and convincing evidence.